## Richmond.

## MELTON V. COMMONWEALTH.

### March 16, 1922.

### Absent, West, J.

1. JURY—*Verdict—Verdict after Discharge of Jury—Case at Bar.*—In the instant case the jury found the accused guilty as charged in the indictment. Whereupon, the judge said to the jury: "Gentlemen, you are discharged," and the jury, without leaving the courthouse, returned to the jury room, accompanied by the sheriff, for the purpose of claiming their attendance fees. Almost immediately, the judge discovered that the jury had made a mistake in fixing the penalty, and ordered the jury to return. He then explained the mistake made as to the penalty and directed them to retire and render a verdict according to the law and the evidence.

   *Held:* That the second verdict brought in by the jury, under these circumstances, having been made after the discharge of the jury, would not support a judgment of conviction.

2. JURY—*What Constitutes Discharge of Jury—Case at Bar.*—In the instant case, the jury had left the court room and were no longer subject to the usual charge to juries that they should not converse with others nor permit others to converse with them about the case, nor was the sheriff in charge of them. And it did not appear from the record what, if any, conversation the jury had with the sheriff or any other person on the subject of the trial.

   *Held:* That the jury had been discharged.

3. JURY—*Discharge of Jury—What Constitutes Discharge—Presence of the Court.*—So long as the whole jury are in the actual and visible presence of the court, and under its control, an inadvertent announcement of their discharge may be recalled as a matter still in the breast of the court, but not thereafter. When the court announces their discharge, and they leave the presence of the court, their functions as jurors have ended, and neither with nor without the consent of the court can they amend or alter their verdict. The sanctity of jury trials cannot be thus subjected to the hazard of suspicion.

Error to a judgment of the Circuit Court of Campbell county.

*Reversed.*

The opinion states the case.

*Duncan Drysdale* and *L. Bradford Waters,* for the plaintiff in error.

*John R. Saunders, Attorney General; J. D. Hank, Jr., Assistant Attorney General,* and *Leon M. Bazile, Second Assistant Attorney General,* for the Commonwealth.

BURKS, J., delivered the opinion of the court.

[1] The accused (plaintiff in error) was found guilty of rape, and sentenced to confinement in the penitentiary for five years—the minimum time prescribed by the statute. The accused insists that the judgment of conviction is erroneous because the jury were discharged before the verdict was rendered upon which the judgment was entered. The facts upon this question are set forth in bill of exception No. 2, as follows:

"Be it remembered that during the trial of this cause the jury, after argument of counsel, came into court from the jury room with the following verdict:

" 'We, the jury, find the prisoner guilty as charged in the indictment, and ascertain his punishment at three years in the penitentiary'—the attorney for the Commonwealth not being present at that time. Whereupon, the judge said to the jury: 'Gentlemen, you are discharged,' and they, without leaving the courthouse, returned to the jury room, accompanied by the sheriff, for the purpose of claiming their attendance fees. Almost immediately the judge, having referred to the statute (section 4414), remarked to the attorney for the Commonwealth, who had come in court in

the meanwhile, that the jury had made a mistake in fixing the penalty; that if they found the accused guilty of rape, the minimum punishment was five years' confinement in the penitentiary—three years being the minimum punishment for attempt to rape—and at once directed the jury, which had not separated or left the court room, except to retire to the jury room, as above detailed, to return into court, and, explaining the statute to them both as to rape and as to an attempt to rape, directed them to retire to their room and render such verdict as they thought proper under the law and the evidence. Whereupon, the jury retired, and after some time brought in their verdict in the following words and figures:

"'We, the jury, find the prisoner guilty of rape, as charged in the within indictment, and fix his punishment at five years' imprisonment in the State penitentiary. (Signed) J. R. Lawson'—to which action of the court in bringing the jury from their room back into the court room, and permitting them to again consider the case and bring in the verdict aforesaid, the accused, by counsel, excepted, which exception was overruled."

In *Mills* v. *Commonwealth*, 7 Leigh (34 Va.) 751, it is said: "On the trial upon the plea of not guilty, the jury brought in a verdict in these words: 'We of the jury find the prisoner guilty of grand larceny'—which being openly read by the clerk, the court said to the jury: 'Gentlemen, you are discharged;' but it being at the same moment suggested to the court that the jury had not ascertained by their verdict any term of imprisonment in the public jail and penitentiary house, they were called back instantly and before they had left the courthouse, except one of them, who had gone perhaps the distance of forty or fifty yards from the courthouse, and was accidentally accompanied by a deputy sheriff. The jury being so called back, were again sent out to ascertain the term of imprisonment,

45

which they accordingly ascertained to be two years, the juror who had left the courthouse being with them. The prisoner thereupon moved the court to set aside the verdict and discharge him from further prosecution; but the court overruled the motion, and pronounced judgment upon the verdict; and the prisoner filed a bill of exceptions, setting forth the facts above stated. On the petition of the prisoner, this court awarded a writ of error to the judgment." The judgment of the court was: "Judgment reversed, verdict set aside, and cause remanded to the circuit superior court for a new trial to be had upon the indictment."

This holding is by no means peculiar to this State. In *Sargent* v. *State* (1842), 11 Ohio 472, the judgment of the trial court permitting a jury to be recalled and amend their verdict after they had been discharged was reversed on appeal. In the course of the opinion it is said: "After the verdict has been received and the jury discharged * * * the control of the jury, and of the court, over such verdict, is at an end. The court cannot alter it, nor can the jury be recalled to alter or amend it. As well might any other twelve men be called to alter it as the men who were jurors. The office of a juror is discharged upon the acceptance of his verdict by the court. * * *

"Although in modern times, the ancient strictness has yielded to a more enlightened reason, yet no rule tending to insure the impartial administration of justice and the purity of jurors has in the slightest degree been abandoned or impaired. * * * But in no case can it be permitted to recall a jury, to alter or amend their verdict, after it has been received and the jury discharged. This would jeopardize the jealous guard with which the law has surrounded jurors to insure the pure administration of justice and to protect the citizen."

In *People* v. *Lee Yune Chong* (1892), 94 Cal. 379, 29 Pac. 776, the jury, after rendering their verdict, were discharged

for the term and left the court room.  Most of them went downstairs to the clerk's office to get warrants for their pay as jurors.  Several, by mistake, went to the sheriff's office on the floor below.  Some of them had conversations about the case with outsiders.  The first verdict was: "We, the jury, find the defendant guilty, and fix the penalty at imprisonment for life."  This was deemed informal because it did not find the degree of the crime, and the jury was recalled and informed that they must find the degree of the crime, whereupon they retired to their room and subsequently brought in their verdict: "We, the jury, find the defendant guilty of murder in the first degree, and fix the penalty at imprisonment for life."  "The exact time which elapsed from the discharge of the jury until their return does not appear, one of the witnesses putting it from five to ten minutes; but it is clear that during that time they were beyond the control of the court, had thrown off their character as jurors, and had mingled with their fellow-citizens, free from any official obligation."  The judgment of the trial court was reversed, and a new trial ordered. The court distinguishes the cases from *People* v. *Jenkins*, 56 Cal. 7, where the jury had not dispersed, and, while admitting that questions difficult of solution might arise under peculiar circumstances, and referring to the right of the jury to correct formal defects in their verdict, quotes from the last-mentioned case the following language: "For that purpose, the court can, at any time while the jury are before it and *under its control*, see that it is amended in form so as to meet the requirements of the law."  While the jury are in the actual presence of the court and under its control, it can see, without resort to testimony, that the fountain of justice has been kept pure, and that no harm could have come to the accused.  Beyond this, we are unwilling to go.

In keeping with this doctrine is *Levells* v. *State* (1877),

32 Ark. 585, where the verdict of the jury and the action of the court thereon appear from the following extract from the opinion:

" 'We, the jury, find the defendant guilty of murder in the first degree. S. Wiggins, foreman.' Which was read by the clerk, and the jury, upon the request of the defendant, was polled, and each juror answered that that was his verdict. The judge then said to the jury: 'Gentlemen, you are discharged; those of you who are of the regular panel, until this afternoon; those specially summoned in this case are discharged finally.' When the jurors arose from their seats in the jury box and began to pass out from the box, three or four at the farther end of the box had moved eight or ten feet from their seats, the others still standing about where they arose, and all in full view of the judge and under his control, when he called to them, saying: 'One moment, gentlemen, take your seats in the jury box again,' and they, without having mingled with the bystanders, immediately returned to their seats, and the judge, addressing them, said: 'This verdict may be defective; there are two counts in the indictment; you will retire to the jury room and so amend your verdict as to show upon which of the counts you find.'

"The jury again retired, and afterwards returned the verdict as follows: 'We, the jury, find the defendant guilty of murder in the first degree, as charged in the first count in the indictment. S. Wiggins, foreman,' and they were again polled at the request of the defendant, and each answered that that was his verdict.

"The defendant objected to the jury being sent back, and to any change in the verdict originally returned.

"The authorities say that, after the verdict has been received and the jury discharged, their control over the verdict is at an end, and they cannot be recalled to alter or amend it. *Sargent* v. *The State of Ohio*, 11 Ohio 472; *Mills*

v. *Commonwealth,* 7 Leigh (34 Va.), 751; *Settle* v. *Allison,*
8 Ga. 208.

"But what is a discharge? Clearly, it would seem to us
that, if they had not separated, and, as a body, are still in
the presence of the court, the order discharging is *in fieri,*
and yet in the breast of the court, and may be recalled. To
correct a mistake when no prejudice can result from it is
not only proper, but is the duty of the court. *Brister* v. *The
State,* 26 Ala. 132."

In *Cook* v. *State* (1877), 60 Ala. 39, 31 Am. Rep. 31,
the jury in a felony case rendered their verdict in the ab-
sence of the prisoner and were discharged. Two of them
had left the court room, all of the others remaining therein,
when the court discovered that the defendant was not pres-
ent, and within five minutes had that jury called together
again. The two jurors who had left the court room were
sworn and stated on oath that they had had no conversa-
tion with any one in regard to the case. The defendant
was then brought into court, and the court handed the in-
dictment to the jury and asked them if that was their ver-
dict, and they replied that it was. Counsel for the defend-
ant were in court when the first verdict was brought in, but
did not object to its being received until after the jury was
first discharged. The judgment of the trial court was re-
versed on appeal, the court saying, amongst other things:

"It seems to have been supposed that if there was error
in receiving the verdict under the circumstances, it was not
beyond correction; and therefore, the persons of whom the
jury were composed were reassembled about five minutes
after they had been discharged; and two of them having
been out of the court room, they were sworn, and under
oath declared that they had not conversed with any one
in regard to the case. But if the jury could then be re-
constituted, to render a verdict which was the result of
former deliberations, why should not the other ten jurors

have been also examined under oath, as their companions were? They also could have communicated about the case with persons in the courthouse during the same five minutes after they were discharged; and it was quite as necessary that they should have been purged on this subject as that the two should be. We think there was no virtue in such an interrogation of any of them."

\*          \*          \*          \*          \*          \*

"We are of the opinion that our rulings on this subject should not be extended further in that direction. The jury, in the present case, were discharged, and had dispersed among the audience in the courthouse and persons outside. It would be a dangerous precedent to hold that, after this, the persons who composed that jury could be reassembled as such to render a verdict in a case of which they had been thus discharged." See also *State* v. *Dawkins*, 32 S. C. 17, 10 S. E. 772; *Ellis* v. *State*, 27 Tex. App. 190, 11 S. W. 111; Note 23 L. R. A. 733-4.

We do not find anything to the contrary in the cases cited for the Commonwealth.

In *Cunningham* v. *State*, 14 Ala. App. 1, 69 So. 982 cited for the Commonwealth, although the jury was recalled after discharge, the error sought to be correct was "immaterial, and could in no way have affected the rights of the defendant;" and, further, "it appears that the jury, although discharged, was called back by the court for the purpose of completing the verdict before leaving the court room."

In *Taggart* v. *Commonwealth*, 104 Ky. 305, 46 S. W. 675, "when the jury first returned their verdict, it read as follows: 'We, the jury, find Dan Taggart guilty of voluntary manslaughter, and fix his punishment by confinement for seven years in the punishment. T. W. Hardy, foreman.' The clerk read the word 'punishment' at the end of the verdict as if written 'penitentiary,' and the jury was discharged, taking their seats in the court room, except one, who

stepped into the water-closet attached to the court room. The clerk then called the court's attention to the mistake, and the members of the jury were called up, and the word 'punishment' was changed to what the foreman said he intended it to be, namely: the word 'penitentiary.' The verdict was then reread, and the jury polled. We perceive no error in this. The context clearly showed that by the word 'punishment' was meant the word 'penitentiary,' and the immediate correction could not in any conceivable way have prejudiced the rights of the appellant. The instruction clearly embraced the law of the case. The judgment is affirmed."

In *Denham* v. *Commonwealth,* 119 Ky. 508, 84 S. W. 538, it was insisted that the jury had been discharged and were thereafter recalled to amend their verdict. The court found, as a matter of fact, that the jury never had been discharged, and that the amendment sought to be made was immaterial, and said in this connection: "But if the jury had been discharged, as charged by counsel for the appellant, even then, as they had not left the presence of· the court before being recalled and directed to retire to their room for the purpose of returning the second verdict, no injury could have resulted to appellant's rights."

[2, 3] When the jury left the court room and went into the jury room they were no longer subject to the usual charge to juries who are allowed to separate pending the trial, that they should not converse with others about the case nor permit others to converse with them about it, nor was the sheriff in charge of them or under any obligation not to converse with them on the subject. So far as this subject is concerned, the relation of the sheriff and the jury to each other was that of third persons. Furthermore, it does not appear from the record who else was in the jury room or what, if any, conversation the jury had with the sheriff or any other person on the subject of the trial. The record

is simply silent on the subject. But this is not material. It is sufficient that the jury had left the presence of the court, and no evidence of what transpired thereafter was admissible. So long as the whole jury are in the actual and visible presence of the court, and under its control, an inadvertent announcement of their discharge may be recalled as a matter still in the breast of the court, but not thereafter. When the court announces their discharge and they leave the presence of the court, their functions as jurors have ended, and neither with nor without the consent of the court can they amend or alter their verdict. The sanctity of jury trials cannot be thus subjected to the hazard of suspicion.

This conclusion renders it unnecessary to pass upon the assignment of error that the verdict is contrary to the law and the evidence. The judgment of the trial court will be reversed, the verdict of the jury set aside and the case remanded for a new trial.

*Reversed.*

PRENTIS, J., dissenting:

I dissent from the conclusion of the majority of the court because I think, under the circumstances of this case, that the correction of the verdict was merely the correction of a clerical error of the jury, made inadvertently in violation of the instruction of the court and the statute which in terms fixes the minimum punishment for the crime of which, before their discharge, the prisoner had been found guilty; and that the cases of *Cunningham* v. *State*, 14 Ala. App. 1, 69 So. 982, and *Taggart* v. *Commonwealth*, 104 Ky. 305, 46 S. W. 674, cited in the majority opinion, state the correct rule which should be applied to this case.