# Richmond

## ARTHUR HODGES v. COMMONWEALTH OF VIRGINIA.

October 9, 1972.

Record Nos. 8005 and 8006.

Present, All the Justices.

*Harlin Perrine*, for plaintiff in error in Record Nos. 8005 and 8006.

*Gilbert W. Haith, Assistant Attorney General (Andrew P. Miller, Attorney General*, on brief), for defendant in error in Record Nos. 8005 and 8006.

COCHRAN, J., delivered the opinion of the court.

Arthur Hodges was charged under one indictment with the murder of Boyd Gene Ferguson (Record No. 8005) and under another indictment with the murder of Warren Douglas Watson (Record No. 8006). He was tried on both indictments at the same time by a jury that found him guilty of first degree murder in each case and fixed his punishment at 99 years in the penitentiary for Ferguson's murder and death for Watson's murder. We granted Hodges writs of error to the judgment order entered December 7, 1971, sentencing him in accordance with the jury verdicts.

Hodges has assigned error to the action of the trial court in overruling his objection to the selection of the jury. He insists that he was thereby denied his right to trial by an impartial jury within the meaning of the Sixth Amendment to the United States Constitution and of Article I, § 8 of the Constitution of Virginia. We find no merit in this contention. Hodges has not specified the error complained of, except to allege that it was committed by the trial court in excluding certain prospective jurors.

The trial court undertook to satisfy the requirements of *Witherspoon* v. *Illinois*, 391 U.S. 510 (1968), by questioning prospective jurors about their views concerning the death penalty and excusing only those who stated that they would not under any circumstances impose a death sentence. Counsel for Hodges made no objection to the manner in which the questions were propounded, nor did he contend that they failed to conform to the principles announced in

*Witherspoon.* He merely made a general objection, unsupported by authority, that we hold to be inadequate.

■ The assignments of error challenging the sufficiency of the evidence are also without merit. Every homicide is presumed to be murder in the second degree, the burden resting on the accused to reduce it and on the Commonwealth to elevate it to murder in the first degree. Determination of the degree is ordinarily a question for the jury. *Painter* v. *Commonwealth*, 210 Va. 360, 364-65, 171 S.E.2d 166, 170 (1969). Having examined the evidence we hold that it is sufficient to support the verdicts finding Hodges guilty of two murders in the first degree. There was ample evidence adduced by the Commonwealth from which the jury could properly conclude that Hodges killed both Ferguson and Watson by wilful, deliberate and premeditated acts.

The testimony of Steve Sloan tends to show that Hodges, suspecting Watson of stealing his personal property, took Watson and Ferguson for a ride to discuss the matter. Hodges picked up Sloan who drove them to a remote mountain area. Sloan said that Hodges had two loaded pistols in his possession, one of which he pointed at Watson while arguing with him in the car. Sloan further testified that after he had stopped the car where Hodges directed, Ferguson got out and began walking away. Hodges handed Sloan one of the pistols with instructions to shoot Watson if he tried to leave, and then, armed with the other pistol, pursued Ferguson. Sloan saw Hodges overtake Ferguson, throw him over a bank, and shoot in his direction a number of times, thereby killing him, as Sloan later discovered. Returning from his attack on Ferguson, Hodges ordered Sloan to shoot Watson, who had escaped from the car through a window and was fleeing down an embankment. When Sloan refused, Hodges took the pistol from the car seat, followed Watson down the slope and shot him to death.

Another Commonwealth witness, Vickie Dennis, testified that earlier on the day of the killings Hodges had asked her where he could find Watson. Hodges told her that Watson had stolen some guns from him, and that he was going to "shoot his damned brains out".

■ Hodges testified that, because of the effects of a pill given him by Vickie Dennis and a quantity of wine that he had consumed, he remembered nothing after Sloan parked the car on the mountain. But Sloan told the jury that Hodges appeared to be normal and

walked and talked as usual. Moreover, Sloan said that after the slayings Hodges expressed regret at having shot Ferguson, explaining that Ferguson was not involved in his "trouble" with Watson. So the question became one of credibility of witnesses, which the jury resolved against Hodges.

Counsel for Hodges, however, argues that the trial court improperly prevented him from impeaching Sloan's credibility. He attempted to show alleged prior inconsistent statements of Sloan's by offering in evidence the entire transcript of evidence taken at the preliminary hearing. We find no error in the trial court's refusal to admit the transcript. Out of the presence of the jury, the trial court carefully outlined to counsel the procedure to be followed in proving prior inconsistent statements. Questions were to be propounded to the witness, and if his answers differed from those given to the same questions in the transcript, that portion of the transcript could be read. If the witness denied having made the answers appearing in the transcript a witness could be used to prove that he had answered as reported in the transcript. This impeachment procedure was correct and proper. *See Wade* v. *Peebles,* 162 Va. 479, 498, 174 S.E. 769, 776 (1934).

Sloan testified that Hodges was the aggressor in seizing Ferguson on the mountain road. Defense counsel made an effort to show that at the preliminary hearing Sloan had testified that Ferguson had first taken hold of Hodges. Thereupon, in accordance with the procedure previously authorized by the trial court, Sloan's earlier answer was read from the transcript. Sloan denied that he had answered in the manner reported. Counsel for Hodges did not then take the further step of proving the accuracy of the transcript as to the answer. So he elected, not only in this instance but elsewhere in cross-examination, to follow in part but not in full the approved impeachment procedure that was available to him.

Hodges objected to the language in the second part of Instruction No. 9[1]. The instruction, however, is a correct statement

---

[1]                    "INSTRUCTION NO. 9

"The Court instructs the Jury that in order to constitute murder in the first degree in this case, the defendant must have been incited to the killing by malice, and the killing must have been wilful, deliberate, and premeditated on the part of the defendant; *but you are further instructed that a mortal wound, given with a deadly weapon, in the previous possession of the slayer, without any, or upon slight provocation, is prima facie, a wilful, deliberate and premeditated killing, and throws upon the defendant the necessity of proving extenuating circumstances, provocation or self defense.*" (Emphasis supplied).

of the law. Indeed, the language complained of is found in an instruction that we have heretofore expressly approved. *Bailey* v. *Commonwealth*, 193 Va. 814, 829, 71 S.E.2d 368, 375-76 (1952).

We conclude that Hodges received a fair trial from a jury that was properly instructed in the applicable law. Since the writs of error were granted, however, the death penalty imposed for Watson's murder, as the Attorney General concedes, has been rendered invalid by *Furman* v. *Georgia*, 408 U.S. 238 (1972), as cruel and unusual punishment violative of Hodges's rights under the Eighth Amendment to the United States Constitution. As we are compelled to follow the ruling of the Supreme Court on this question, we must now determine the procedure to be followed in this case and in other similar cases.

We reject Hodges's contention that he is entitled to a new trial in each case on the issues of guilt and punishment. There is no error in the judgment order entered on the jury verdict in Record No. 8005 finding Hodges guilty of murder in the first degree and fixing his punishment at 99 years for the killing of Ferguson. Furthermore, there is no error in that portion of the judgment order entered on the jury verdict in Record No. 8006 finding Hodges guilty of murder in the first degree for the killing of Watson. But the portion of the judgment order sentencing him to death in accordance with the jury verdict must now be set aside.

Without deciding whether we have authority under Article VI, § 6 of the Virginia Constitution and Code § 19.1-288 to modify the judgment order by reducing the death sentence to life imprisonment, as argued by the Attorney General, we conclude that this case (Record No. 8006) should be remanded for a new trial on the issue of punishment. We have recently approved this procedure where, "under newly-announced constitutional principles, a felon's sentence has been set aside not because the jury that tried him could not constitutionally find him guilty, but because the jury as then constituted could not constitutionally impose the death sentence." *Snider* v. *Cox*, 212 Va. 13, 14, 181 S.E.2d 617, 618 (1971). *See also Huggins* v. *Commonwealth*, 213 Va. 327, 191 S.E.2d 734, this day decided.

Under the Constitution of Virginia the right to trial by jury in criminal cases is guaranteed. Va. Const. Art. I, § 8. Moreover, where a criminal case is tried by a jury the punishment shall be ascertained by it. Code § 19.1-291, -292. Here the jury fixed Hodges's punishment for the Watson murder at the maximum permitted at the time

of trial. Nevertheless, it would be sheer speculation for us to conclude that, if death had not then been a permissible punishment, the jury would have fixed the punishment at life imprisonment. The jury might well have agreed upon 99 years, as it did for the Ferguson murder.

*People* v. *Anderson*, 6 Cal.3d 628, 493 P.2d 880, 100 Cal. Rptr. 152 (1972), cited by the Attorney General, fails to persuade us that we should summarily reduce Hodges's sentence to life imprisonment. In that case the California Supreme Court ruled the death penalty unconstitutional under the California Constitution and reduced to life imprisonment the punishment of death fixed by the jury. But under California law murder in the first degree was punishable only by death or life imprisonment. Cal. Pen. Code §§ 190, 190.1 (West). After voiding the death penalty the court imposed the only sentence that was then applicable. No such restrictive penalty provisions, however, obtain in Virginia. Under Code § 18.1-22 murder in the first degree may be punished, after the death penalty has been nullified, by confinement for life or for any term not less than 20 years.

Accordingly, the judgment order is affirmed in Record No. 8005. The judgment order is affirmed as to guilt and reversed as to punishment in Record No. 8006, and the case is remanded for a new trial on the issue of punishment to be conducted in accordance with the guidelines approved in *Snider v. Cox, supra,* and explicated in *Huggins v. Commonwealth, supra.*

*Affirmed as to Record No. 8005.*

*Affirmed in part; reversed in part; and remanded as to Record No. 8006.*