## Richmond

MICHAEL J. LEMELLE

v.

COMMONWEALTH OF VIRGINIA

April 29, 1983.

Record No. 821239.

Present: Carrico, C.J., Cochran, Poff, Compton, Stephenson, and Russell, JJ., and Harrison, Retired Justice.

*Charles G. Butts, Jr. (Butts & Butts,* on brief), for appellant.
*Donald R. Curry, Assistant Attorney General (Gerald L. Baliles, Attorney General,* on brief), for appellee.

POFF, J., delivered the opinion of the Court.

In this criminal appeal, we consider whether the trial judge should have declared a mistrial when he discovered a substantive defect in the penalty clause of the verdict after the jury had been discharged.

A grand jury indicted Michael John LeMelle, an inmate in a correctional facility, for injuring an employee of that facility in violation of Code § 18.2-55. After deliberating for 27 minutes, the petit jury returned a written verdict finding defendant "guilty as charged" and fixing his punishment at "Term of imprisonment of 1-10 years". When the clerk announced the verdict, he misread the penalty clause to state "a term of imprisonment of ten years".

After the trial judge had polled and discharged the jury and adjourned court, he discovered the defect in the written verdict. The following morning, he recalled the jurors and instructed them to "specify the term" that they "actually meant or had in mind or agreed upon." He explained further that "[i]f you didn't agree on one yesterday, and simply adopted a range, you will have to agree on one this morning."

When the jury retired, defendant moved for a mistrial on the ground the jury, once discharged, had no authority to cure a de-

fective verdict. The trial court overruled the motion. After deliberating for 67 minutes, the jury returned with a verdict fixing punishment at "Confinement of 10 years". The trial court denied defendant's second motion for a mistrial and entered judgment on the verdict.

This Court has consistently applied the rule, followed generally in most jurisdictions, that once a jury is discharged and leaves the presence of the court, it cannot be reassembled to correct a substantive defect in its verdict. *See* Annot., 66 A.L.R. 536 (1930).

The leading case in Virginia is *Melton* v. *Commonwealth*, 132 Va. 703, 111 S.E. 291 (1922). There, the jury returned a verdict fixing the penalty at a term shorter than the statutory minimum. The trial judge discharged the jury, and the jurors left the courtroom. While they were collecting their fees in the jury room, the judge discovered the defect. Promptly, he reassembled the jury and explained the error. After further deliberation, the jury returned a lawful verdict, and the judge entered judgment imposing the penalty as amended.

Reversing the judgment and remanding the case for a new trial on all issues, we said:

> When the court announces their discharge and they leave the presence of the court, their functions as jurors have ended, and neither with nor without the consent of the court can they amend or alter their verdict. The sanctity of jury trials cannot be thus subjected to the hazard of suspicion.

*Id.* at 712, 111 S.E. at 294; *accord Mills* v. *Commonwealth*, 34 Va. (7 Leigh) 751 (1836) (discharged jury recalled "instantly" to set penalty omitted in original verdict).

The parties agree that the defect in the jury's first verdict was substantive. We have ruled that "if any change in the substance of the verdict is to be made, the jury should be sent back to their room". *Porterfield* v. *Commonwealth*, 91 Va. 801, 807, 22 S.E. 352, 354 (1895). But the Attorney General argues that the defect was cured by the poll of the jurors conducted before they were discharged, and hence, that the failure to send them back to their room to deliberate was not prejudicial error. We upheld a similar argument in *Burton* v. *Commonwealth*, 109 Va. 800, 63 S.E. 464 (1909). We cannot apply *Burton* here, however, because it is im-

possible to determine from the transcript of trial proceedings whether the inquiry addressed to the jurors pertained to the verdict as written or the verdict as read by the clerk. And it appears the jurors may have been divided in their understanding of the inquiry, for in their second sitting they required more than an hour to reach unanimous agreement on the quantum of the penalty while they had consumed only 27 minutes determining both guilt and penalty in their first deliberation.

■ We reaffirm the rule in *Melton* and *Mills*, and we will reverse the judgment. The Attorney General asks us, in such event, to remand the case for a new trial "limited to the issue of punishment" because "the matter of the defendant's guilt is not an issue in this appeal." He relies upon *Snider* v. *Cox*, 212 Va. 13, 181 S.E.2d 617 (1971), and its progeny, *Hodges* v. *Commonwealth*, 213 Va. 316, 191 S.E.2d 794 (1972), and *Huggins* v. *Commonwealth*, 213 Va. 327, 191 S.E.2d 734 (1972).

In *Snider*, a rape case, the *habeas* trial court had set aside a death penalty on the ground veniremen opposed to capital punishment had been excluded from the jury in violation of the constitutional principle articulated in *Witherspoon* v. *Illinois*, 391 U.S. 510 (1968). The *habeas* court ordered a new trial limited to the issue of punishment, and Snider appealed, contending that he was entitled to a new trial on all issues. In an opinion affirming the judgment, we applied an exception to the traditional requirement of a unitary trial.

> In *Johnson* v. *Commonwealth*, 208 Va. 481, 158 S.E.2d 725 (1968), we recognized the established practice of one trial on guilt and punishment and left change of that general practice to the Legislature. But we are not here changing the general practice. We are sanctioning a trial to determine punishment alone where, under newly-announced constitutional principles, a felon's sentence has been set aside not because the jury that tried him could not constitutionally find him guilty, but because the jury as then constituted could not constitutionally impose the death sentence.

212 Va. at 14, 181 S.E.2d at 618.

The exception was narrowly defined. A new trial limited to the issue of punishment was sanctioned only when a penalty, lawful when imposed, was later rendered invalid "under newly-an-

nounced constitutional principles". In *Snider*, the Sixth Amendment principle announced in *Witherspoon* intervened. Thereafter, in *Hodges* and *Huggins,* both capital cases, the Eighth Amendment principle announced in *Furman* v. *Georgia*, 408 U.S. 238 (1972), intervened, and upon remand, we applied the *Snider* exception.

As distinguished from the verdicts in *Snider, Hodges*, and *Huggins*, the verdicts in *Melton* and *Mills*, like that under review, were defective in substance when imposed. The same was true in *Spear* v. *Commonwealth*, 221 Va. 450, 270 S.E.2d 737 (1980); *Thompson* v. *City of Lynchburg*, 155 Va. 1122, 156 S.E. 392 (1931); *Williams* v. *Commonwealth*, 153 Va. 987, 151 S.E. 151 (1930); *Porterfield* v. *Commonwealth, supra; Burton* v. *Commonwealth, supra*; and *Nemo* v. *Commonwealth*, 43 Va. (2 Gratt.) 558 (1845). In each case, we remanded for a new trial on the issue of guilt as well as punishment.

Aside from the *Snider* exception, we have never departed from the established practice of a unitary trial, and absent definitive statutory authority, we decline to do so here.* Rather, we will reverse the judgment and remand the case for a new trial on all issues.

*Reversed and remanded.*

---

*The General Assembly has recently granted us such authority in capital cases by amending Code §§ 17-110.1 and 19.2-264.3. Acts 1983, c. 519. *See Wm. Patterson* v. *Commonwealth*, 222 Va. 653, 660, 283 S.E.2d 212, 216 (1981).