COURT OF APPEALS OF VIRGINIA

**PUBLISHED**

Present:   Judges Fulton, Causey and Lorish
Argued by videoconference


TRAVIS TREMAINE WILLIAMS

                                                    OPINION BY
v.        Record No. 1923-23-2         JUDGE LISA M. LORISH
                                                    MARCH 4, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
Dennis M. Martin Sr., Judge

Sante John Piracci (Sante J. Piracci P.C., on brief), for appellant.

Jason D. Reed, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Travis Tremaine Williams challenges his convictions, arguing that the Commonwealth

gave him insufficient notice of its intention to seek a life sentence under Code § 19.2-297.1.  He

also argues that the trial court erred in denying his motion for a mistrial after the jury made two

errors: first, mistakenly finding him guilty of two offenses on the same verdict form—one being

a lesser-included offense of the other—and second, failing to render a verdict on a separate

offense on a different verdict form.  We find that the Commonwealth's written notice was

sufficient.  We also conclude that the court did not abuse its discretion in denying his motion for

a mistrial because there was sufficient evidence to support the court's finding that the jury could,

and did, follow the court's instructions.  Thus, we affirm the convictions.

                                    BACKGROUND

The sufficiency of the evidence in this case is not challenged on appeal, so we cover the

facts only briefly.  After Williams and Felicia White ended their relationship, Williams pulled a gun

on her, seriously assaulted her, and fired the gun. Williams was originally arrested on warrants for numerous charges from this incident.

Then, on July 15, 2021, Williams was directly indicted for use of a firearm in the commission of an abduction, second or subsequent offense; unlawful wounding during the commission or attempted commission of an abduction; abduction with two or more prior acts of violence; malicious wounding with two or more prior acts of violence; use of a firearm in the commission of a malicious wounding, second or subsequent; assault and battery against a family member, third offense; and unlawful wounding during the commission or attempted commission of assault and battery on a family member, third offense. A capias was issued the same day to serve Williams with copies of these indictments. Many of these charges were duplicative of the offenses previously brought by warrant.

That same day, the Commonwealth served Williams's attorney by email with a "Notice of Intent to seek punishment under Code § 19.2-297.1." A copy was docketed as filed in court the next day. The notice first recited the current charges against Williams, then stated:

> The defendant has been convicted of two or more separate acts of violence when such offenses were not part of a common act, transaction, or scheme and who had been at liberty as defined in Code § 53.1-151 between each conviction. [] The Commonwealth, by this filing, is notifying the defendant and court of its intention to seek a sentence of life imprisonment that shall not have all or any portion of it suspended under Code § 19.2-297.1.

The capias was executed on July 29, 2021, and Williams received copies of the indictments on that day, two weeks after the notice of intent was given.

At trial a year later, the Commonwealth moved to *nolle pros* the duplicative charges originally brought by warrant and proceeded to trial on the directly indicted charges only. This trial ultimately resulted in a mistrial after the jury saw the shackles on Williams's legs.

- 2 -

Almost another full year passed, and Williams again went to trial before a jury in June 2023. At that point, he objected to the introduction of his prior convictions, arguing that the prosecution had breached the notice requirement in Code § 19.2-297.1. In effect, he argued that the Commonwealth's notice was defective because it was served too early—before he was served with the indictments on July 29, 2021—and that these were the operative charges at trial after the earlier charges were nolle prossed. His counsel argued that the charges referenced in the notice "didn't exist at the time" because "[h]e wasn't served [and] I wasn't appointed" to represent him on them. The Commonwealth countered that Williams received notice that "specifically referenced offenses that the defendant committed on February 28th, 2021, which is what we already have evidence of," and that it was "not aware of any authority whatsoever that says that you must have in a very particular order the indictment versus the notice under [Code § 19.2-]297.1."

The court overruled Williams's objection finding that "[t]he real point of the notice is that he knows that, if he's convicted of these three offenses," the Commonwealth will "seek an enhanced punishment under the statute" and that Williams received notice more than 30 days before trial as required by the statute. The court allowed the Commonwealth to introduce certified copies of documents showing his prior convictions for abduction, malicious wounding, and two instances of domestic assault and battery. Williams unsuccessfully renewed his argument after the close of evidence. He did not call any witnesses and rested without testifying.

After the jury finished deliberating, but before the jury had been discharged or had left the presence of the court, the court realized that the jury made a mistake on one of the verdict forms. The jury erred by selecting both of the first two options on a form with three mutually exclusive options: to find the defendant guilty of (1) possessing or transporting a firearm after being convicted of a *violent felony* as charged in the indictment; (2) possessing or transporting a firearm after being convicted of a *felony* as charged in the indictment; or (3) find the defendant

not guilty. (Emphases added). Williams suggested to the court that the remedy should be to make "it clear to the jury that they have to pick—of the options, they have to pick one of them." The court agreed that it was a fair remedy and instructed the jury to "go back to the jury room" and "consider either one, two, or three based upon the evidence that you have heard in this case." The jury then found Williams guilty of possessing or transporting a firearm after being convicted of a violent felony.

After this, and again before the jury had been discharged or had left the presence of the court, the court realized that the jury made another error on a different verdict form because it had not filled out the form for unlawful wounding while committing or attempting to commit an assault and battery of a family member.

At this point, Williams moved for a mistrial, arguing that the "[t]he jury indicated that they reached a unanimous verdict on all the charges, and apparently, there was some oversight where they had not done so." He continued, "Combined with the issue on the other piece, Judge, I think there is sufficient grounds to think my client wasn't—there is sufficient confusion that the jury has that the Court ought to declare a mistrial." The trial court denied the motion, reasoning that the jury had shown they carefully considered the verdicts, noting that "they already found the defendant not guilty of one of the offenses," so they "clearly have deliberated and considered the cases, and this is just not a wholesale, We're going to go back there and find the defendant guilty." The court concluded that the "jury's been dealing with 15 charges. I think they just did not consider this— they considered it but didn't get the verdict sheet. I'll give them the opportunity to deliberate on this one." After receiving remedial instructions from the court, the jury ultimately found Williams guilty of unlawful wounding while committing or attempting to commit an assault and battery of a family member.

The court sentenced Williams to two life sentences plus 78 years with 65 years suspended.[1] This appeal followed.

ANALYSIS

I.  The Commonwealth's notice to seek a life sentence under Code § 19.2-297.1 was neither defective nor insufficient.

This Court reviews questions of statutory interpretation de novo.  *See Jefferson v. Commonwealth*, 298 Va. 1, 10 (2019).  Williams argues that the Commonwealth's notice of intent to seek punishment under Code § 19.2-297.1 was "insufficient to comply with the requirements of the code" because it was given two weeks before the "charges for which he was convicted and sentenced" were "served on the defendant."  As a result, he argues that the trial court should not have admitted his prior convictions into evidence and asks this Court to "dismiss the abduction and malicious wounding convictions and/or that the matter be remanded for a new trial."  The Commonwealth argues that it provided sufficient notice under the statute, nearly two years before trial, because the notice identified his charges and stated that "[t]he Commonwealth, by this filing, is notifying the defendant and court of its intention to seek a sentence of life imprisonment that shall not have all or any portion of it suspended under Code § 19.2-297.1."

Virginia's "three strikes" law is Code § 19.2-297.1(A), and states that "[a]ny person convicted of two or more separate acts of violence . . . shall, upon conviction of a third or subsequent act of violence, be sentenced to life imprisonment . . . ."  The statute contains a notice provision: "[t]he Commonwealth shall notify the defendant in writing, at least thirty days prior to

---

[1] The sentencing order, while properly noting that Williams's total sentence was 2 life sentences plus 78 years, does not state the specific sentences imposed for the malicious wounding and abduction charges.  Consequently, we remand solely for correction of the clerical error in the sentencing order.  *See* Code § 8.01-428(B); *Bagley v. Commonwealth*, 73 Va. App. 1, 30 n.10 (2021).

trial, of its intention to seek punishment pursuant to this section." Code § 19.2-297.1(B). Here, the Commonwealth served Williams's attorney with a "Notice of Intent to seek punishment under Code § 19.2-297.1" on July 16, 2021, almost two years before trial. The Commonwealth's notice meets the only two statutory notice requirements: that it be in writing and that it be given to the defendant at least 30 days before trial. Nothing in the statute requires that the defendant be served with the indictments before receiving notice under Code § 19.2-297.1. Thus, the Commonwealth satisfied the notice requirements of Code § 19.2-297.1.

Even if the written notice was defective, it is undisputed that Williams had actual notice that the Commonwealth was seeking a life sentence under Code § 19.2-297.1 and thus an opportunity to consider the consequences of proceeding to trial. Federal courts evaluating the statutory requirement that a defendant receive notice before the government may seek enhanced punishment based on prior convictions have concluded that the validity of an information or notice required by 21 U.S.C. § 851 "must be evaluated in light of the purposes of § 851, which are quite distinct from those that underlie the requirement of an indictment in a criminal offense." *Vadas v. United States*, 527 F.3d 16, 22 (2d Cir. 2007). For example, the Court of Appeals for the Second Circuit recognized that:

> Section 851's notice requirement reflects, essentially, two goals, first "to allow the defendant to contest the accuracy of the information," and second "to allow defendant to have ample time to determine whether to enter a plea or go to trial and plan his trial strategy with full knowledge of the consequences of a potential guilty verdict."

*Id.* at 23 (quoting *United States v. Williams*, 59 F.3d 1180, 1185 (11th Cir. 1995)). "Indeed, the provision was enacted 'to fulfill the due process requirements of reasonable notice and an opportunity to be heard with regard to the prior conviction.'" *Id.* (quoting *United States v. Mayfield*, 418 F.3d 1017, 1020 (9th Cir. 2005)). If a defendant has actual notice that prior convictions will be used to enhance a sentence, and shows no prejudice from any shortcoming in

- 6 -

how the statutorily required notice was given, federal courts have found no reversible error. *See, e.g.*, *id.* at 22-23; *Espinoza v. United States*, 745 F.3d 943, 945 (8th Cir. 2014) (concluding in a case where the notice included the wrong court name that "to find the § 851 notice was insufficient would be to improperly elevate the form of § 851 over its substance"); *United States v. Hamilton*, 208 F.3d 1165, 1169 (9th Cir. 2000) ("As long as the information provides clear notice to a defendant of the prior convictions (and the court gives an opportunity to attack convictions . . .), then the statute has been satisfied."); *Williams*, 59 F.3d at 1185-86 (noting "[t]he established purposes of the filing and service as fully met upon the first filing and service, at least where the case involves the same attorneys, the same court, and the same indictment" and rejecting the argument that a new notice had to be filed before a second trial).

We find that Code § 19.2-297.1 serves the same purpose as 21 U.S.C. § 851—to protect a criminal defendant's due process rights by ensuring the defendant has the opportunity to mount a vigorous defense with full knowledge of the consequences of conviction. If actual notice fulfilling this purpose is provided and no prejudice is shown, technical deviations in the way the notice was provided do not warrant reversal.

Williams's counsel conceded at oral argument that "there is no other way to read the record" except to find that Williams had actual notice that the Commonwealth was seeking a life sentence under Code § 19.2-297.1. Indeed, the Commonwealth introduced the recording of a jail call in which Williams discussed this very fact with White, explicitly telling her that "they gonna give me a life sentence." Williams also presented no evidence of prejudice from the manner in which notice was provided here. He had the opportunity to dispute the accuracy of the prior convictions, to weigh his options between having a trial or seeking a potential plea agreement, and had nearly two years to prepare for that trial, all while being fully aware that he would face a life sentence if convicted.

As a result, the trial court did not err in ruling that the Commonwealth's notice under Code § 19.2-297.1 was neither defective nor insufficient.

## II. The court did not err in overruling Williams's motion for a mistrial.

Williams argues that the trial court abused its discretion because it ignored the "manifest necessity" to declare a mistrial because the jurors were "incapable" of following, or "unable to" or "unwilling" to follow the court's instructions. This Court "reviews the denial of a motion for a mistrial under the abuse of discretion standard of review." *Warnick v. Commonwealth*, 72 Va. App. 251, 263 (2020). "The granting of a mistrial for manifest necessity may become necessary when the jury ceases to function as a jury." *Prieto v. Commonwealth*, 278 Va. 366, 389 (2009). "In determining whether manifest necessity exists, a trial court is vested with broad discretion." *Id.* (quoting *Smith v. Commonwealth*, 239 Va. 243, 267 (1990)). "An abuse of discretion has occurred only when reasonable jurists could not differ in their assessment that an erroneous result was reached." *Clark v. Commonwealth*, 78 Va. App. 726, 756 (2023) (internal quotes omitted) (quoting *Harvey v. Commonwealth*, 76 Va. App. 436, 472 (2023)).

Here, the trial court found that the jury mistakenly returned a verdict form that contained two guilty verdicts, seemingly not realizing that option two on the form was a lesser-included offense of option one and that only one offense could be selected. Before the jury had been discharged or had left the presence of the court, the court acknowledged the jury's mistake in selecting both offenses, and the court followed the course of action proposed by Williams—that the court instruct the jury to pick only one offense or find him not guilty.[2] The jury followed the

---

[2] We note that the Supreme Court has "consistently applied the rule, followed generally in most jurisdictions, that once a jury is discharged and leaves the presence of the court, it cannot be reassembled to correct a substantive defect in its verdict." *Quesinberry v. Commonwealth*, 241 Va. 364, 377 (1991) (citing *LeMelle v. Commonwealth*, 225 Va. 322, 324 (1983)). *See also Melton's Case*, 132 Va. 703, 712 (1922) ("When the court announces their discharge and they leave the presence of the court, their functions as jurors have ended, and neither with nor without

- 8 -

court's instructions and subsequently selected one option, finding Williams guilty of possessing or transporting a firearm after being convicted of a violent felony. The court then discovered— again before the jury had been discharged or had left the presence of the court—that the jury made a second error by failing to fill out another verdict form for unlawful wounding while committing an assault and battery, leaving the form blank.

Williams argued to the trial court that these two errors combined showed that there was "sufficient confusion that the jury has that the Court ought to declare a mistrial." The court disagreed, noting that the jury had demonstrated that it individually considered the verdicts "because they already found the defendant not guilty of one of the offenses" and that they took more than two hours to deliberate and had "actually sent a note to the Court to see two pieces of evidence." As a result, the court concluded that "they have clearly deliberated in this matter, and it's not a wholesale go back there and check the boxes." The court denied the motion for a mistrial, and because there were 15 different charges, it found that the jury should have the opportunity to go back and deliberate about the charge on the blank verdict form. Just as it did with the previous error, the jury returned to deliberate and reached a verdict, finding Williams guilty of unlawful wounding while committing an assault and battery.

Williams likens his case to *Prieto*, where a juror failed to follow an *Allen* charge that reminded "the jury of the need to reach a verdict if one can be reached without any individual juror giving up his or her conviction." 278 Va. at 387. There, the juror "refus[ed] to continue deliberations" and "revealed that he had not 'maintaine[d] his honest convictions'" during the guilt phase after the jury had returned a guilty verdict in a capital murder case. 278 Va. at 386,

---

the consent of the court can they amend or alter their verdict. The sanctity of [the] jury trial cannot be thus subjected to the hazard of suspicion."). Indeed, "[i]f there is doubt as to the meaning of the jury's verdict the question should have been raised by counsel before the jury was discharged, thus permitting the verdict to be corrected." *Rakes v. Fulcher*, 210 Va. 542, 549 (1970) (quoting *Northern Va. Power Co. v. Bailey*, 194 Va. 464, 473 (1952)).

389. The Court agreed with the trial court's grant of a mistrial for "manifest necessity" because "the jury had ceased to function as a jury." *Id.* at 389. The Court reasoned that the juror's misconduct "in effect impeached his verdict rendered in the guilt or innocence phase," and supported the Court's determination that the trial court did not abuse its discretion in granting a mistrial. *Id.*

Unlike *Prieto*, the jury here heeded the court's curative instructions on two separate occasions and remedied its errors, presenting no evidence that it "ceased to function as a jury." Because the jurors were capable of, and willing to, follow the court's instructions, there is no evidence that the trial court abused its discretion in denying a mistrial. For these reasons, the trial court did not err.

CONCLUSION

We affirm the circuit court's ruling that the Commonwealth gave sufficient notice to Williams that it sought a life sentence under Code § 19.2-297.1, and we affirm the denial of the motion for a mistrial. We remand the case solely for the correction of the clerical error in the sentencing order.

*Affirmed and remanded.*