Charles LANKFORD, Petitioner,

v.

O. S. FOSTER, Sheriff, Respondent.

Civ. A. No. 81–0159–R.

United States District Court,
W. D. Virginia,
Roanoke Division.

Aug. 12, 1982.

Christopher M. Hopkins, Hall, Surovell, Jackson & Colten, P. C., Fairfax, Va., Alan H. Levine, Clark, Wulf & Levine, New York City, for petitioner.

Thomas D. Bagwell, Asst. Atty. Gen., Richmond, Va., for respondent.

## MEMORANDUM OPINION

TURK, Chief Judge.

Charles Lankford, currently incarcerated at the Roanoke County-Salem Jail Facility, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. §§ 2241–2254. Petitioner is detained pursuant to the judgment of the Circuit Court for the County of Fairfax entered on December 19, 1978, whereby petitioner was convicted of three counts of forcible sodomy and sentenced to ten years on each count with the terms to run consecutively, and with one term suspended.

## STATEMENT OF FACTS

Charles Lankford until 1968 spent most of his life incarcerated for certain felonies, none of which was sex related. After his release, petitioner participated in numerous community rehabilitative activities. These activities ranged from a juvenile delinquent

counselor to Director of a local branch of Offenders Aid and Restoration. Petitioner sought and was granted a full executive pardon for his prior offenses. In the course of his activities, petitioner received a number of awards and recognitions for his community service. In 1975, petitioner unsuccessfully campaigned for the Office of Sheriff of Fairfax County.

In 1968, petitioner married within a short time of his release. The woman he married had two daughters, one fourteen and the other nine, and one son, aged twelve or thirteen. Approximately one year after their marriage, a daughter was born. Eventually both the oldest daughter and the son by the wife's previous marriage left home. In 1975, the marriage began to fail. In March of 1978, petitioner and his wife entered into a voluntary separation agreement which provided, *inter alia*, joint custody of the daughter of their marriage with primary custody to be vested with petitioner. Despite petitioner's attempts to save the marriage, he filed for divorce on April 7, 1978, and sought sole custody of his daughter.

The prosecutrix in the convictions currently being challenged was the youngest step-daughter of petitioner. She was eight years old at the time her mother married petitioner. She lived in the Lankford home until August of 1977 when she left to join her natural father and attend college in Florida. Sometime in April of 1978, the stepdaughter related to her natural father that she had been sodomized on numerous occasions by petitioner while she had been living at the Lankford home between 1970 and 1976. As a result of these allegations, petitioner was indicted on three counts of sodomy. The indictments charged sodomy by petitioner with the mouth, by force, on or about December 20, 1975, sodomy by the mouth, by force, on or about October 2, 1976, and sodomy with the mouth, by force, on or about November 12, 1976, all in violation of Va. Code § 18.2–361 (1950).

Petitioner retained as counsel for the sodomy charges the same counsel who was representing him in the divorce proceedings. At the preliminary hearing, which was not recorded or in any other manner transcribed [1], certain evidence was presented. The preliminary hearing revealed for the first time the allegations of numerous uncharged sexual assaults. It also confirmed that petitioner was unsure of, or refused to commit herself to, the exact dates of the charged offenses for the October and November, 1976, assaults. Counsel submitted a Motion to Dismiss the two counts on due process grounds; however, the motion was denied.

The trial of the case was before a jury on December 18–19, 1978. The trial judge conducted the *voir dire* without any input from defense counsel or the Commonwealth's Attorney. The *voir dire* consisted solely of those questions prescribed by the Virginia Supreme Court in Rule 3A:20(a).

The defense put forth by petitioner's counsel involved both an alibi defense and an attack on the credibility of the prosecutrix.[2] Counsel later conceded that the alibi defense was not a strong one but it was there and might as well be used. *Magistrate's Hearing*, p. 320. Counsel therefore introduced evidence establishing the alibis through the testimony of the petitioner and various witnesses. The attempted attack on the credibility of the prosecutrix occurred through questioning phrased so as to indicate that the prosecutrix was assisting her natural mother in obtaining the custody of the daughter of the Lankford marriage through the timing of the revelations. Counsel also attempted to stress the incredibility of the number of assaults without any complaints from the prosecutrix until almost eighteen months after the last incident and without any knowledge of any other member of the family.

---

1. Counsel states he may have taken notes and that he directed petitioner to take notes; however, there is no verbatim account of the proceeding.

2. As there were no witnesses to the assaults, the single determination for the jury revolved around the credibility of the complainant and the defendant.

The Commonwealth prosecuted the case by calling five witnesses. The prosecutrix testified that the uncharged incidents began occurring at the age of nine and continued over one hundred times. She stated that she did not realize the significance of the encounters although petitioner told her not to tell her mother since knowledge of the incidents would hurt her mother. Other testimony brought out the facts that she developed a hatred for Lankford as her sexual awareness developed, she threatened Lankford with a knife during one quarrel, Lankford offered to set her up in business after her move to Florida, as well as to make her a beneficiary on his life insurance policy, and that the charges were brought at her natural father's insistence that her mother notify authorities.

Mrs. Lankford, the natural mother of the prosecutrix, testified for the prosecution with no objection from the defense counsel.[3] Her testimony consisted of describing the marital and family relationships with petitioner from its beginning to some time after the separation. Included were statements that the prosecutrix moved to a room with a lock on the door when her sister moved out of the house.

The prosecution rested its case on the first day of trial and the defense began its case on the second day. Counsel for the defendant did not meet with petitioner on the intervening night to discuss the case or otherwise prepare the petitioner for the following day. As its case, the defense presented five witnesses on petitioner's behalf. The first witness implied the reason for the charges being brought was for the prosecutrix's mother to obtain custody over the Lankford's daughter. The next three witnesses provided the alibi defense upon which counsel relied. Although the prosecutrix had not determined the exact dates of the charged assaults, the witnesses stated where petitioner had been at the times the assaults allegedly had taken place. Finally, the petitioner was put on the stand to proffer evidence in the form of denials of the charged acts and possible motives for the accusations. He also elaborated on and disputed earlier testimony from his wife and step-daughter. Specifically, petitioner testified as to the discipline he accorded the step-daughter, denied the step-daughter's testimony that he offered to make her beneficiary on a life insurance policy, confirmed that sexual relations between he and his wife ceased shortly after the birth of their daughter, disputed the wife's testimony regarding violent outbursts after their separation and contended that the charges were a means of obtaining custody of their daughter.

After petitioner's testimony, the defense rested and the prosecution called rebuttal witnesses. These witnesses included a policeman, the brother of the prosecutrix, and the natural father of the prosecutrix. The testimony elicited from these individuals indicated that the prosecutrix was treated more leniently than the others, that the petitioner had offered to set the prosecutrix up in business, and that a warrant served upon petitioner for an argument with his wife was on a certain date instead of the date mentioned by the petitioner.

The Commonwealth's Attorney and counsel for defense submitted the jury instructions to the judge for examination and approval. None of the instructions so submitted defined either the crime in terms of the elements required for the Commonwealth to meet its burden of proof nor the elements themselves. The judge instructed the jury as to the crime through a reading of the statute but did not on his own motion define the crimes or their elements. The jury found petitioner guilty on all three counts and fixed his punishment at ten years, the maximum, on each count. The sentence on the third count ultimately ran concurrently with the other two sentences.

## GROUNDS ASSERTED FOR HABEAS RELIEF

Petitioner primarily challenges the validity of his conviction by alleging that his

---

**3.** Counsel neither invoked the spousal privilege pursuant to Va.Code § 19.2–271.2 nor moved for a mistrial.

attorney rendered ineffective assistance of counsel. Specifically, petitioner states the following acts and omissions rendered the assistance of counsel ineffective:

a. Defense counsel did not cause the testimony at the preliminary hearing to be recorded so as to provide a basis for subsequent impeachment of the prosecutrix;

b. Defense counsel did not attempt to exclude the prosecutrix's testimony as to prior uncharged acts;

c. Counsel failed to investigate available witnesses who could provide insight into the relationship between petitioner and the prosecutrix, and provide a motive for the accusation. Counsel also failed to secure the services of a psychiatrist to testify as to the motivation of the prosecutrix in making the accusation;

d. Counsel failed to discover during *voir dire* whether the jurors had strong feelings about sexual crimes;

e. Counsel failed to exclude petitioner's wife as a witness or moving for a mistrial when she was called;

f. Counsel did not rebut certain testimony deemed prejudicial to petitioner. Specifically, counsel did not rebut testimony regarding (1) a knife incident in which the prosecutrix threatened petitioner; (2) the prosecutrix's move to a bedroom with a door lock; (3) the termination of sexual relations between petitioner and his wife; and (4) the offer of petitioner to finance the prosecutrix's venture into business;

g. Counsel did not investigate and call possible character witnesses;

h. Counsel did not prepare available defense witnesses for the trial after the first day in which damaging testimony was given;

i. Counsel failed to request jury instructions defining the elements of force and penetration; and

j. Counsel failed to request a limiting charge as to the prior uncharged acts.

As alternate grounds for habeas relief, petitioner states that the judge failed to properly instruct the jury as to several key elements, including the need for force; the need for penetration; the prior uncharged acts; and reasonable doubt. Finally, petitioner claims that there was insufficient evidence of force and penetration so as to sustain the convictions.[4]

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

The gravamen of petitioner's allegations lies in what he considers to be the ineffective assistance of counsel at various stages of the proceedings against him. The Sixth Amendment to the United States Constitution provides the basis for the right to counsel. It states, in pertinent part, that "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." This general right to counsel has evolved to mean the right to the effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). The Fourth Circuit utilized McMann to provide a new standard for determining the effectiveness of counsel. In *Marzullo v. Maryland*, 561 F.2d 540 (4th Cir. 1977), the standard adopted was phrased as follows: Was the defense counsel's representation within the range of competence demanded of attorneys in criminal cases? *Marzullo*, at 543.[5]

---

**4.** A United States Magistrate conducted an evidentiary hearing concerning the allegations and prepared a report containing findings of fact, conclusions of law, and recommended disposition. The Magistrate concluded that many of the ineffectiveness allegations related to "trial tactics, or more specifically, tactical emphasis" and that "defense counsel's efforts fell within the normal range of competence demanded of attorneys in like situations." *Magistrate's Re-* port, at 14. As to the other grounds for *habeas* relief, the Magistrate found each to be without merit. The Magistrate recommended that the petition for a writ of habeas corpus be denied and the case stricken from the docket. *Magistrate's Report*, at 19.

**5.** In *Marzullo*, the Fourth Circuit expressly abandoned the "farce and mockery" test previously used. It indicated that it had implicitly abandoned the test in *Coles v. Peyton*, 389 F.2d

The Fourth Circuit cautioned that effective representation was not the same as errorless representation. *Marzullo*, at 544. It noted that an attorney may make decisions which in hindsight prove wrong but are not necessarily grounds for relief. Rather, in order to merit relief,

A convict generally must establish that his counsel's error was so flagrant that a court can conclude that it resulted from neglect or ignorance rather than from informed, professional deliberation.

*Marzullo*, at 544.

*Marzullo* also states that because the standard as promulgated "measures an attorney's conduct by comparison with the competence generally found in the profession, it requires an objective assessment of counsel's adequacy."[6] *Id.*, at 544. A standard applied in such a manner will necessarily be broad and flexible since it encompasses many different factual situations and circumstances.

Accordingly, this court must now examine the conduct of counsel and determine whether that representation was within the range of competence demanded of attorneys in criminal cases, keeping in mind that petitioner must establish that the error was so flagrant that this court could conclude that it resulted from neglect or ignorance rather than from informed, professional deliberation.

Upon a review of the record, it is apparent that all participants in the post-conviction proceedings have devoted primary attention to the trial preparation and presentation. As noted in the Statement of Facts, defense counsel proceeded primarily on the theories of incredibility and alibi. Accordingly, throughout the habeas proceedings, much discussion has been oriented towards the tactics of defense counsel in organizing the case and determining what types of evidence would be most advisable. Regard-

less of the arguments presented by the parties to this proceeding, certain facts are undisputed:

(A) defense counsel failed to record the preliminary hearing;

(B) although petitioner provided defense counsel with a list of witnesses and while those witnesses were subpoenaed, not a single pure character witness was called; and

(C) defense counsel failed to *voir dire* the jury

Therefore, these aspects of the trial shall now be addressed by the court.

## A. PRELIMINARY HEARING

Petitioner states that the failure of the attorney to request that the judge have the testimony at the preliminary hearing reduced to writing constitutes ineffective assistance of counsel.

In Virginia, where an indictment has yet to be returned, the preliminary hearing serves as the stage whereby a judge determines whether there is probable cause to charge the accused with an offense. At the hearing, in the presence of the accused, the judge listens to evidence presented for and against the accused. Although the accused shall not be called upon to plead, he may cross examine witnesses, introduce witnesses in his own behalf, and testify in his own behalf. Va. Code § 19.2–183. Supreme Court Rule 3A:5. Such testimony may be reduced to writing if deemed proper by the judge. Va. Code § 19.2–185; Supreme Court Rules 3A:5(b)(1).

Counsel for petitioner had the opportunity to request that the testimony of the preliminary hearing be reduced to writing. Yet no request was made. In fact, the only notes taken at the entire proceeding were written by the petitioner at the direction of counsel. Counsel for petitioner contends

---

224 (4th Cir. 1968), but since district courts continued to apply it, the standard should be expressly disavowed. *Marzullo*, at p. 543.

**6.** The Court further stated that the matter should, for the most part, be left to the discretion of the trial court. In exercising its discre-

tion, a trial court may refer to such sources as precedent from state and federal courts, state bar canons, the American Bar Association Standards Relating to the Defense Function, and in some instances, expert testimony on the particular conduct at issue.

that even had the proceeding been reduced to writing, it would not have made any difference as there were no vast discrepancies between the testimony at the preliminary hearing and that at the trial. In fact, counsel for petitioner indicates that the only thing he "really wanted out of the preliminary hearing was to narrow the times and dates so we could get on working up an alibi or whatever our defense would be." *Magistrate's Hearing*, p. 332. Yet had there been discrepancies, the transcript would have provided the possibility of impeachment provided the proper procedure to prove the prior inconsistent statement was followed. *See Hodges v. Commonwealth*, 213 Va. 316, 191 S.E.2d 794 (1972).[7] Notes which only allude to the testimony given would be clearly inadequate to

impeach the prosecutrix since there is no verbatim account of the prior inconsistent statements. Defense counsel conceded at the Magistrate's Hearing that it was not the best way to impeach someone. *Magistrate's Hearing*, at p. 35.

The Court concludes that defense counsel's failure to record the preliminary hearing constitutes a serious error of judgment in a case where the credibility of the prosecutrix is at issue.

## B. FAILURE TO VOIR DIRE THE JURY

Petitioner alleges that counsel's failure to voir dire the jury, other than those questions asked by the judge as required by the Supreme Court Rule 3A:20(a),[8] constitutes ineffective assistance of counsel.

---

**7.** Expert witnesses for both the respondent and the petitioner indicated the utility in having a transcript of the preliminary hearing available for use in impeaching a witness in serious felony cases. Furthermore, the ALI–ABA Manual and *Defending Criminal Cases in Virginia* (both the 1975 and 1981 editions) similarly endorse having recorded testimony of the preliminary hearing for future use:

Transcribing testimony of witnesses at the preliminary hearing oftentimes can prove very valuable to the defense. This would be especially true when the transcript can be utilized to impeach a witness at the trial. It is not uncommon to find a discrepancy at the hearing. Many factors could be responsible for the variance, such as the lapse of a great deal of time between the preliminary hearing and the trial, or testimony that has been fabricated by the witness at the preliminary hearing or trial. Other factors would be the inability of a witness to remember or retain the facts, change of circumstances, or a change of attitude on the part of the witness.

Counsel who is equipped with a full transcript of the testimony of the witnesses is in a much better position to prepare for his defense at the trial. When the testimony is being transcribed, counsel can devote most of his time to the examination and cross-examination of witnesses, and does not have to concentrate on the taking of notes during the hearing. He can better carry out the task of fully developing the facts which could prove invaluable in the preparation and defense of his client. The likelihood of counsel overlooking some important aspect of his case at the trial is greatly diminished when there is a record of the preliminary hearing available for ready reference.

The financial condition of your client must be considered when deciding upon the use of a

reporter at the preliminary hearing. It could well be a situation where the ultimate benefits derived from the use of the transcript could be overshadowed by the cost incidental thereto in preparation of the case...

*Defending Criminal Cases in Virginia*, p. 149 (1975 ed.) and 9–42 (1981 ed.) (footnotes omitted).

Testimony given by the petitioner indicated that he could have raised money for a transcript of the preliminary hearing. *Magistrate's Hearing*, p. 278. Petitioner further contends that the possibility of the preliminary hearing being taped or transcribed was never discussed with him

**8.** Rule 3A:20(a) of the Rules of the Supreme Court provides, in pertinent part, that:

After the prospective jurors are sworn on the voir dire, the court shall question them individually or collectively to determine whether anyone:

(1) Is related by blood or marriage to the accused or to a person against whom the alleged offense was committed;

(2) Is an officer, director, agent or employee of the accused;

(3) Has any interest in the trial or the outcome of the case;

(4) Has acquired any information about the alleged offense or the accused from the news media or other sources and, if so, whether such information would affect his impartiality in the case;

(5) Has expressed or formed any opinion as to the guilt or innocence of the accused;

(6) Has a bias or prejudice against the Commonwealth or the accused; or

(7) Has any reason to believe he might not give a fair and impartial trial in the Common-

The record of the trial shows after the jury panel was called, the Court asked certain questions relating to the qualifications and the impartiality of the individual members of the jury panel. Once the questioning had been completed, the court called out both the prosecutor's name and the defense counsel's name at which time they expressed their satisfaction with the panel. Defense counsel did not request that the court ask any other questions that might indicate the partiality of the panel nor did the court on its own ask questions other than those required by Rule 3A:20.

▮ The accused's right to an impartial jury is a fundamental right protected by the Constitution. Although Virginia law at the time of the trial did not provide an absolute right for defense counsel to *voir dire* the jury panel, it did allow for an opportunity. Rule 3A:20(a) provided, in pertinent part, that

> . . . the court, or counsel with permission of the court may examine on oath any prospective juror or may ask any question relevant to his qualifications as an impartial juror. A party objecting to a juror may introduce competent evidence in support of the objection.

Similarly, Va. Code § 8.01–358 (1977 Repl. Vol.) stated that

> The court and counsel for either party may examine under oath any person who is called as a juror therein and may ask such person or juror directly any relevant question to ascertain whether he is related to either party, or has any interest in the cause, or has expressed or formed any opinion, or is sensible of any bias or prejudice therein; and the party objecting to any juror may introduce any competent evidence in support of the objection; and if it shall appear to the court that the juror does not stand indifferent in the cause, another shall be drawn or called and placed in his stead for the trial of that case.
>
> A juror, knowing anything relative to a fact in issue, shall disclose the same in open court.

wealth and the accused based solely on the law

Although the accused has the right to a fair and impartial jury, the Virginia Supreme Court in *Turner v. Commonwealth*, 221 Va. 513, 273 S.E.2d 36 (1980), *cert. denied*, 451 U.S. 1011, 101 S.Ct. 2347, 68 L.Ed.2d 863 (1981), determined that this right did not create a constitutional right to counsel conducted voir dire. Since that decision, however, the Virginia Legislature amended Va. Code § 8.01–358 to state that "The court and counsel for either party shall examine under oath. . ." (emphasis added). Thus the Legislature implicitly recognized the advantage to counsel conducted *voir dire.*

The importance of voir dire is manifested in both editions of *Defending Criminal Cases in Virginia.* In the section concerning jury selection it states

> In the interest of efficiency and to avoid unnecessarily prolonged voir dire examinations, Rule 3A:20(a) requires the court to ask specific questions that, to a large extent, will determine the qualifications of the prospective jurors. The Rule does not, however, restrain the court from asking other questions. Questions on voir dire may be presented to the jury by defense counsel, the prosecutor, or by the judge.

*Defending Criminal Cases* (1975 ed.), p. 228. and

> One advantage in having the judge conduct the voir dire is that the jury will not feel intimidated by the questioning of counsel, or be antagonistic toward him, but will feel more committed to answer the judge truthfully. Defense counsel should take advantage of all opportunities to raise questions on voir dire and should keep a list of useful questions for reference purposes.

*Defending Criminal Cases* (1981 ed.), pp. 11–22.

Among those questions the treatise suggests are the jurors' connection with law enforcement, prior dealings with the attorneys in the case, knowledge of the case through media reports, proximity of resi-

and the evidence.

dence to the crime and presumption of evidence.

Expert witnesses in this case agree that effective assistance of counsel requires not only those questions required but also others pertaining to the case to be tried. Other questions suggested concern sex crimes, petitioner's status as an ex-convict, and whether the jurors or their families had ever been victims of a crime. Although the witnesses noted that the *voir dire* was not an absolute right, they felt that it was necessary in this case and that the court would not object. The failure of the trial counsel to even attempt to ask the suggested questions constituted ineffective assistance of counsel in their minds.

The Court concurs with the expert witnesses and *Defending Criminal Cases in Virginia* that defense counsel should have submitted questions to the jury for purposes of *voir dire*. In determining whether the jury was indeed impartial, counsel should have examined them to determine whether they or their families had ever been victims of a sex crime and whether they had young daughters. Failure to seize upon this opportunity constitutes a serious tactical error and poor judgment.

## C. FAILURE TO CALL CHARACTER WITNESSES

Petitioner also claims that counsel rendered ineffective assistance of counsel through his failure to call certain character witnesses. Petitioner contends that had character witnesses been called, the prosecution's depiction of petitioner as a violent ex-convict who drank too much and sexually abused his stepdaughter would be undermined.

Testimony elicited from trial counsel at the Magistrate's Hearing revealed that various persons were available to testify on behalf of petitioner. Among the persons who could attest to petitioner's good character were the Sheriff of Fairfax County, a Congressman, a pastor, a member of the Fairfax Board of Supervisors, and others. While the others would testify as to the relationship between the petitioner and the prosecutrix, the aforementioned would testify as to the general reputation of the petitioner in the community for truth and veracity. Obviously, the community reputation of these witnesses would serve to enhance the defense.

Counsel placed the burden of identifying many character witnesses[9], contacting them, and interviewing them with petitioner.[10] *Magistrate's Hearing*, p. 406 (Shannon direct examination) 285, (Lankford cross-examination). Counsel described petitioner as "a very active participant" in this matter. *Magistrate's Hearing*, p. 406. However, counsel informed petitioner "well in advance of trial" that many of these witnesses would not be used. *Magistrate's Hearing*, p. 323.

Counsel did subpoena several character witnesses who ultimately were not called to testify. Consequently, not a single "pure" character witness was put on the stand. Experts for both the petitioner and the respondents agreed that had such testimony been available, it would have been advantageous to present it. Petitioner, as an ex-convict, needed rehabilitation which this type of testimony could provide. Especially important is such testimony where counsel intends to present a defense involving the credibility of the accused against the prosecutrix through alibis.

---

**9.** Two types of witnesses were available for this trial. First, there were witnesses who would provide the alibi defense for petitioner. The second category would rehabilitate the petitioner's character. Counsel for petitioner had Lankford contact both types although the character witnesses were by far the more prevalent.

**10.** *Defending Criminal Cases in Virginia* (1975 ed. and 1981 ed.) appears to place the burden on counsel for the accused. In the section concerning the Initial Investigation and Inter-

view of the Accused, a checklist is present which reminds the attorney to obtain a list of witnesses. The witnesses are to include witnesses to the event that occurred, alibi witnesses, and character witnesses. The 1981 edition further directs the attorney to obtain from the accused the name (spelling, aliases, and nicknames), address, phone number, and other information helpful in locating the witness. See p. 125 (1975 ed.) and 9–16.

The Court concludes that the failure of counsel to present those character witnesses who were supoenaed constitutes serious tactical error and poor judgment where the credibility of the petitioner is at issue. The witnesses could have rehabilitated petitioner's status as an ex-convict and reestablished petitioner's credibility to his advantage against the prosecutrix.

The court believes that the failure to record the preliminary hearing, the failure to voir dire the jury, and the failure to call character witnesses constitutes flagrant error and cumulatively reflects representation below that required by *Marzullo v. Maryland*, 561 F.2d 540 (4th Cir. 1977). However, of even more concern to this court than the three omissions stated above is the failure of the defense counsel to prepare and submit adequate jury instructions towards the end of the trial. Although this issue was not addressed as comprehensively in the *habeas* proceedings as the issues above, the Court believes that the seriousness of the error warrants in depth discussion.

### D. FAILURE TO REQUEST JURY INSTRUCTION DEFINING THE ELEMENTS OF THE CRIME

The record reflects that the Grand Jury returned three indictments against petitioner. These indictments charged sodomy by the petitioner with the mouth, by force, on or about December 20, 1975, sodomy by the mouth, by force, on or about October 2, 1976, and sodomy with the mouth, by force, on or about November 12, 1976, all in violation of Va. Code § 18.2–361 (1975 Repl.Vol. as amended).[11] That section of the Virginia Code provides that

11. Sodomy with the mouth is another term for cunnilingus whereas sodomy by the mouth indicates fellatio.

12. One such instruction for the fellatio charge is derived from the statute, Va.Code § 18.2–361 and *Towler v. Peyton*, 303 F.Supp. 581 (W.D. Va.1969):

The defendant is charged with the crime of sodomy by force. The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime:

If any person shall carnally know in any manner any brute animal, or carnally know any male or female person by the anus or by or with the mouth, or voluntarily submit to such carnal knowledge, he or she shall be guilty of a Class 6 felony.

If any person shall by force carnally know any male or female person by the anus or by or with the mouth he or she shall be guilty of a Class 3 felony.

Va. Code § 18.2–361.

In order for the Commonwealth to meet its burden of proof with respect to these charges, two essential elements must be shown. First, the Commonwealth must demonstrate that penetration occurred. *Ashby v. Commonwealth*, 208 Va. 443, 158 S.E.2d 657 (1968), *cert. denied*, 393 U.S. 1111, 89 S.Ct. 884, 21 L.Ed.2d 808 (1969). Secondly, since the indictment charged the use of force in the commission of the acts (thereby bringing the acts within the second sentence of Va. Code § 18.2–361), the Commonwealth must prove that force was used in committing the act.

It is apparent from the record that defense counsel never defined the charges or their elements in the jury instructions submitted to the presiding judge. Defense counsel submitted a total of five instructions to the judge, three of which were given and two of which were withdrawn. The three that were given included the presumption of innocence, the burden of the Commonwealth in proving its case, and an alibi instruction. Not one of the instructions submitted, whether given or withdrawn, defined the crime or its elements although such jury instructions were readily available.[12]

(a) That the penis of the defendant (name of person) penetrated into the mouth of the prosecutrix; and

(b) That it was by force.

The instruction continues that if the Commonwealth has met its burden, then you shall find the defendant guilty and the range of punishment is prescribed; of course, failure of the Commonwealth to meet its burden means that the defendant shall be found not guilty.

The record further reflects that neither the court nor the Commonwealth's Attorney defined the crime or the elements comprising the charged acts. The Commonwealth's Attorney, in his opening remarks before the jury, alluded to the definitions of the charges; however, as the transcript indicates, the charges were not clearly defined nor were the elements expounded:

If you are able to distinguish between the wording of the three indictments that were read prior to this trial taking place, you will have heard that the first indictment alleging an offense arising in November of 1975 alleges sodomy with the mouth. The distinction there, sodomy with the mouth, is committed when the defendant places his mouth on the gentle (sic) parts of the victim; the second incident arising on October 2nd, 1976 alleges the defendant committed sodomy by the mouth. Sodomy by the mouth suggests that the defendant forced the victim to place her mouth on his penis. Again, in November of 1976, sodomy by the mouth.

*Trial Transcript*, p. 20.

This discussion fails to establish the legal elements required to meet his burden of proof. It does not suggest that penetration is an essential element nor does the statement indicate that force is needed. In fact, the statement goes so far as to suggest that merely placing the mouth on the genitals constitutes sodomy, thereby eliminating the need for penetration.

The court similarly did not instruct the jury as to the charges and their elements. The sole reference to the charges occurred when the judge gave the instructions concerning whether petitioner "did carnally know" the prosecutrix "by force". These instructions were those submitted by the Commonwealth's Attorney and varied only

Where the cunnilingus charge is concerned, minor variations are needed. The instruction may be stated in the following manner:
The defendant is charged with the crime of sodomy by force. The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime:
(a) That the mouth of the defendant (name of person) penetrated into the vagina of the prosecutrix; and

in the use of the phrases "by the mouth" and "with the mouth".

It is this court's conclusion that the failure of defense counsel to instruct the jury as to the charges and their elements arises from the neglect or ignorance of the attorney rather than from informed, professional opinion.

The court notes that such terms as "carnal knowledge", "sodomy", "penetration", and "force" were used indiscriminately without the benefit of definition for the jury. The first two terms are confusing. Carnal knowledge commonly means sexual intercourse. *See Black's Law Dictionary*. However, the context in which the phrase was used did not mean intercourse but rather fellatio or cunnilingus. *See Ashby v. Commonwealth*, 158 S.E.2d 657 (1968), *cert. denied*, 393 U.S. 1111, 89 S.Ct. 884, 21 L.Ed.2d 808 (1969) (carnal knowledge as fellatio); *Ryan v. Commonwealth*, 219 Va. 439, 247 S.E.2d 698 (1978) (carnal knowledge as cunnilingus).

The term sodomy also was not used in its commonly used context. Ordinarily sodomy suggests anal intercourse. However, the Commonwealth's Attorney used it in his opening statement to mean fellatio and cunnilingus.[13]

The elements of the crime, "penetration" and "force", were crucial to the case and should have been defined so that the jurors could understand the legal requirements to determine guilt or innocence. A jury instruction concerning penetration for fellatio was available at the time of petitioner's trial based on *Ashby v. Commonwealth*, supra.:

To be sodomy, there must be penetration, no matter how slight, of the penis into the mouth of another. Mere touching of

(b) That it was by force.
The instruction then resumes much as the fellatio charge.

**13.** In Va.Code § 18.2–67.1 (1982 Repl.Vol.), sodomy is defined as cunnilingus, fellatio, anallingus, or anal intercourse. Thus, the definition of sodomy has been expanded by statute.

the penis to the mouth is not sufficient. It is not necessary that there be an ejaculation.

Based on the fellatio instruction, an instruction on penetration for cunnilingus would require only a slight variation:

> To be sodomy, there must be penetration, no matter how slight, of the mouth into the vagina of another. Mere touching of the mouth to the vagina is not sufficient.

■ An instruction for force was also crucial in this case as the testimony advanced by the prosecutrix may have put doubt into the minds of the jurors that force was actually used in the commission of the acts. *See* Trial Transcript, of December 18, 1978, at 39, 45 and 50. An instruction regarding force is easily adapted from the instructions available on forcible rape:

> The element of force required must be sufficient to overcome any unwillingness on the part of (name of person) to engage in the commission of the act. There must be a show of force sufficient to overcome resistance. She must resist by every means within her power under all the circumstances then existing. However, she is not required to resist if she reasonably believes that resistance would be useless and would result in serious bodily injury to her. You may consider whether or not any weapons were used, the time, the place, the number of persons involved, their relative physical size and strength and all the circumstances disclosed by the evidence.

*See Mings v. Commonwealth*, 85 Va. 638, 8 S.E. 474 (1889) (verbal resistance required

at a minimum to show force); *Poindexter v. Commonwealth*, 213 Va. 212, 191 S.E.2d 200 (1972) (amount of resistance requires consideration of circumstances); *Schrum v. Commonwealth*, 219 Va. 204, 246 S.E.2d 893 (1978) (evidence of show of force necessary to overcome resistance required). It is axiomatic that if the Commonwealth fails to prove that force was used, petitioner could not be convicted of the offenses with which he was charged. It is noteworthy that the same charge, without the use of force, was a Class 6 felony as opposed to a Class 4 felony. Therefore, a more lenient punishment would have been imposed had the element of force not been proven.[14]

It is the experience of this court that a case such as petitioner's requires instructions indicating the elements of the crime as well as the definitions of the elements. The transcript of the trial indicates that with the proper instructions, the jury may have inferred that penetration, an essential element, did not take place in at least one of the incidents and that force, the other essential element, may not have occurred at all.[15] Therefore, with proper jury instructions, the jury may have found the petitioner not guilty of forcible sodomy or perhaps guilty of a lesser included offense.

The importance of jury instructions is stressed by *Defending Criminal Cases in Virginia*. In the 1975 edition, the treatise states that

> It is the duty of counsel to aid the the court in the function of instructing the jury. The very purpose of permitting requests to charge is that the jury may be

---

**14.** Defense counsel could also have submitted instructions for a lesser included offense which may have aided petitioner. The Court must, upon request of counsel, submit to the jury any offenses that are lesser included offenses of the crime charged in the charging paper and upon which the evidence would support a conviction. *Jefferson v. Commonwealth*, 214 Va. 432, 201 S.E.2d 749 (1974). Among those lesser included offenses which counsel could have requested instructions were carnal knowledge without force.

**15.** The jury may have easily found from the testimony of the prosecutrix that "penetration"

and "force" did not occur in each charged incident. With regard to the first incident, the prosecutrix testified that the petitioner placed his mouth on her vagina although she tried to get away. *Trial Transcript* of December 18, 1978, page 39. The second incident occurred when petitioner was placing his penis in her mouth although she was trying to get away. *Trial Transcript* of December 18, 1978, page 45. Finally, the prosecutrix testified as to the third incident that the petitioner placed his mouth on her vagina while she was trying to get away. *Trial Transcript* of December 18, 1978, page 50.

fully informed as to all the law governing the case and the trial court enabled to correct at once any mistake that may have been made in instructing them. The rule is, therefore, firmly established that where the charge of the court does not cover all phases of the case, counsel is bound to call attention to the omission, by appropriate request.

*Defending Criminal Cases,* at 249.

Furthermore, the instructions serve an important purpose:

> The purpose of an instruction is to aid the jury in reaching the correct conclusion, and the model instruction is a simple, impartial, clear, concise statement of the law applicable to the evidence in the case then on trial. It should constantly be borne in mind that it is the jury's responsibility to ascertain the facts of a case and to apply those facts as found by them to the instructions of the court which contain the law of the case.

*Defending Criminal Cases,* at 250.

It is clear that defense counsel's failure to provide appropriate, available, instructions violates this duty and clearly prejudiced petitioner in the trial.

The Court further notes that defense counsel's failure to submit adequate jury instructions even extended to the theory of his case. Counsel's theory suggested the sheer incredibility of the number of attacks without the knowledge of others in the household or complaints from the prosecutrix. However, although jury instructions to that effect were available, none was submitted:

> You may find the defendant guilty on the testimony of (name of person) alone if it is credible and you believe it beyond a reasonable doubt. But if her testimony is incredible, or so contrary to human experience or to usual human behavior as to make it unworthy of belief, it is not sufficient to support a finding of guilty.
>
> If considering whether or not her testimony is credible, you may consider an unreasonable delay, if any, in reporting the alleged offense.

*See Willis v. Commonwealth,* 218 Va. 560, 238 S.E.2d 811 (1977).

*Summary*

■ It is clear to this court that the term ineffective assistance of counsel means more than just pointing to one incident in the course of the trial to justify relief. The Sixth Amendment guarantees that in all criminal prosecutions, the accused shall enjoy the right to have the assistance of counsel for his defense. This recognizes that the "average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, wherein the prosecution is presented by experienced and learned counsel." *Johnson v. Zerbst,* 304 U.S. 458, 462–463, 58 S.Ct. 1019, 1022–1023, 82 L.Ed. 1461 (1938). The assistance of counsel is not "discharged by an assignment at such a time or under such circumstances as to preclude the giving of *effective* aid in the preparation and trial of the case." *Powell v. Alabama,* 287 U.S. 45, 71, 53 S.Ct. 55, 77 L.Ed. 158 (1932) (emphasis added). Therefore, the right to be heard

> ... would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence.

*Powell,* at 69, 53 S.Ct. at 64.

■ To assess whether counsel committed errors that constitute ineffective assist-

ance of counsel, sometimes more than individual actions in and of themselves must be considered. Any one allegation of an act or omission in the conduct of a trial may not rise to a level of ineffective assistance of counsel. Indeed, it may be properly justified as a trial tactic. However, the totality of the omissions and the errors may clearly reflect a lack of adequate representation in the preparation and trial of the case. *United States v. Hammonds*, 425 F.2d 597, 604 (D.C.Cir.1970).

> There are no tests by which it can be determined how many errors an attorney may make before his batting average becomes so low as to make his representation ineffective. The only practical standard for habeas corpus is the presence or absence of judicial character in the proceedings as a whole.

*Diggs v. Welch*, 148 F.2d 667, 670 (D.C.Cir.), cert. denied, 325 U.S. 889, 65 S.Ct. 1576, 89 L.Ed. 2002 (1945). Therefore, in assessing whether counsel rendered ineffective assistance of counsel, the record as a whole and the cumulative effect of the acts and omissions should be considered. *United States v. Hammonds*, 425 F.2d 597 (D.C.Cir.1970).

The failure to seek to record the preliminary hearing, the failure to voir dire the jury, and the failure to call character witnesses all constituted serious tactical mistakes as outlined above. The materiality of these errors is perhaps clearer in hindsight. But, it requires no hindsight to ascertain that the failure to seek proper instruction of the jury constituted professional error of the first magnitude. Herein lies the crux of the case.

█ As found by the magistrate and as ably argued by the respondent, it may well be that many of the multitude of professional errors in this case can be attributed to defense counsel's trial strategy to place all his emphasis on the incredibility of the testimony of the prosecutrix. However, a decision to place all the eggs in one basket does not justify failure to challenge the quality or quantity of the eggs in the prosecution's basket. Stated differently, the adoption of a trial strategy does not excuse defense counsel's obliviousness to certain weaknesses in the Commonwealth's evidence. In Virginia, carnal knowledge and penetration are subject to strict definition. Defense counsel made no attempt to insist that the jury find that these elements had been met. In Virginia, the concept of force is somewhat nebulous. Defense counsel made no attempt to insist that the jury be called upon to deal with the vagueness of the prosecutrix's testimony. Requests for such instructions could have been made without in any way compromising defendant's theory of defense. The seriousness of such omissions is manifest and the appropriate response by this court is clear. It is apparent to this court that the cumulative effect of these errors and omissions indicates a lack of adequate representation under the *Marzullo v. Maryland* standard thereby prejudicing the petitioner and denying him a fair trial.

Accordingly, the writ of habeas corpus shall be issued in an Order to be entered this day. A certified copy of this Memorandum Opinion shall be sent to counsel for petitioner and respondents.