# Richmond

## W. L. THOMPSON v. CITY OF LYNCHBURG.

January 15, 1931.

Present, Campbell, Holt, Epes, Hudgins and Browning, JJ.

1124

*Paul H. Coleman* and *A. S. Hester*, for the plaintiff in error.

*W. T. Spencer, Jr.*, for the defendant in error.

CAMPBELL, J., delivered the opinion of the court.

W. L. Thompson obtained this writ of error to a judgment of the Corporation Court of the city of Lynchburg, sentencing him to confinement in jail for a term of four months and to the payment of a fine of $100.00.

On the 15th day of February, 1930, the accused was tried and convicted on a municipal warrant charging that he did "unlawfully have in his possession twenty-five gallons of ardent spirits." His punishment was fixed at a fine of $50.00 and four months confinement in the city jail. Upon appeal to the corporation court, defendant was tried by a jury, which, upon the conclusion of the evidence, brought in this verdict: "We the jury find the defendant guilty as charged in the within warrant and fix his punishment at $100.00 fine and four months *suspended* jail sentence." (Italics added.)

As shown by the court order: "Thereupon counsel for the accused moved the court before discharging the jury to send the jury back to their room to consider further and bring in a proper verdict, as the verdict brought in cannot be received by the court as it is not any verdict at all." The court overruled the motion and entered the judgment complained of.

The municipal ordinance under which the defendant was tried is identical with the State prohibition law (Acts 1924,

chapter 407, section 12), and provides that "the possession by any person of ardent spirits at any place other than his permanent home shall be unlawful." The grade of offense is a misdemeanor and the punishment prescribed is by a fine of not less than fifty dollars nor more than five hundred, and by confinement in jail not less than one nor more than six months.

The action of the court in entering judgment on the verdict constitutes the first assignment of error.

The verdict returned by the jury clearly indicates that the jurors were under the impression that they had the right to suspend the execution of the jail sentence imposed, and thus imbued with such an erroneous impression, the fine was increased from fifty dollars, imposed by the municipal court, to one hundred dollars.

 Under the provisions of the city ordinance and under the general law the court is empowered to suspend jail sentence, but no such power is delegated to a jury. As triers of the facts, the province of the jury ceases with the ascertainment of the punishment. It then becomes the duty of the court, before the jury is discharged, to put the verdict in that form which clearly reflects the intention of the jury. If there is any ambiguity apparent on the face of the verdict a poll of the jury will ordinarily clarify it. If, however, this resort fails, it is the proper practice for the trial court to send the jury back to their room where they can, untrammelled by any outside influence, arrive at a proper verdict. *Burton* v. *Commonwealth*, 109 Va. 800, 63 S. E. 464.

In *Williams* v. *Commonwealth*, 153 Va. 988, 151 S. E. 151, 153, the rule is clearly and succinctly stated by Chief Justice Prentis in this language:

 "This court will go far in sustaining the trial court judges when they undertake to reform defective verdicts in the presence of the jury and before they are discharged. It is their duty to do so as to matters of form.

It is also clearly their duty to see that the jury is not discharged upon the return of an illegal verdict. In such event they should be properly instructed, and not discharged (except for some good reason) until they have found and returned a legal verdict upon which the appropriate judgment can be based. This court will also go far in the disregard of defects in verdicts which have been accepted by the trial courts, but from which notwithstanding such defects, the real finding of the jury may be determined, though it may not be accurately couched in the technical language of the law. It is always necessary, however, before a judgment can be entered upon a verdict, that it appear just what the jury found or intended to find."

In the case at bar we are dealing not with a reformed or amended verdict but with a verdict which shows upon its face the clear intention of the jury to impose upon the defendant only a pecuniary punishment. This, of course, under the statute adverted to, they could not do. In this situation it was the duty of the trial court to instruct the jury as to the measure of punishment and to further instruct the jury that they were without power to suspend the jail sentence. Thus instructed, the jury should have been sent back to their room to further consider their verdict. It is impossible to logically conclude that the jury would have fixed the period of punishment at four months if they had been told that the court would refuse to suspend the jail sentence. The verdict of the jury was defective and the judgment of the court based thereon constitutes reversible error.

It is further assigned as error that the court erred in permitting police officer Jacobs to detail a conversation between Mrs. James, the chief witness for the Commonwealth, and himself.

In her testimony in chief Mrs. James identified defendant as the person who carried the liquor to the barn

where it was found. On her cross-examination she was not so positive in her identification, her statement being: "I can only say that the man I saw unloading the car looked like W. L. Thompson. All I would tell the jury is that the person looked like him."

The testimony of Jacobs against which complaint is lodged is as follows: "Harvey and I talked to Mrs. James * * *. In our talk with her she said she did not know what date the whiskey was put in the barn. She said Alvin Harris and Dick Thompson put it there. If I remember correctly, we went out there about the middle of the day. She said Alvin Harris and Dick Thompson had come and gotten some of the whiskey out about nine or ten o'clock in the morning of that same day."

Not once did Mrs. James state in her examination that Harris and Thompson "had come and gotten some of the whiskey out." The evidence clearly falls under the ban of hearsay evidence and was injected, no doubt, to bolster up the theory of identification. The statement, if made, was an *ex parte* statement, not in the presence of the accused and highly prejudicial.

The second assignment of error is well founded.

The remaining assignments of error deal with questions which are not likely to arise upon a new trial; therefore we deem it unnecessary to discuss them.

For the errors above pointed out, the judgment will be reversed and the case remanded for a new trial.

*Reversed.*