# Richmond

ROBERT NICHOLAS V. COMMONWEALTH OF VIRGINIA.

November 24, 1947.

Record No. 3250.

Present, Hudgins, C. J., and Gregory, Eggleston, Spratley and Buchanan, JJ.

The opinion states the case.

*W. M. Abbitt, A. L. Pitts, Jr.*, and *John B. Boatwright*, for the plaintiff in error.

*Abram P. Staples, Attorney General*, and *G. Stanley Clarke, Assistant Attorney General*, for the Commonwealth.

BUCHANAN, J., delivered the opinion of the court.

The defendant, Nicholas, was charged with selling a fifth of whiskey to Frazier White in violation of section 4675 (40) of the Code, which fixes as punishment for such an offense a fine of not less than fifty nor more than five hundred dollars and confinement in jail for not less than thirty days nor more than twelve months. He was convicted by a jury and sentenced to pay a fine of one hundred dollars and thirty days in jail.

His petition for this writ of error makes no specific assignments of error and otherwise fails to conform to Rule 14 of this court. That rule and section 6346 of the Code

are clear and explicit, and those who undertake to proceed without compliance with them do so at their own risk. See *Orr* v. *Pennington*, 93 Va. 268, 24 S. E. 928, and *Sowers* v. *Shertzer*, 171 Va. 426, 199 S. E. 477. No objection has been made on that score by the defendant in error.

Nicholas, a negro, operates a store in Cumberland county. About one-thirty o'clock in the morning of August 25, 1946, State trooper Guthrie, accompanied by deputy sheriff Blanton and F. D. Shepherd, drove to Nicholas' place and stopped outside to observe it. While they were sitting there, four or five white men came from the opposite end of the driveway and went into the store. One of these men was Frazier White; another was a young man named Omohundro. The other two or three did not testify and were not identified in the evidence. Guthrie and Shepherd followed them into the store and on going through the door they saw the white men talking to Nicholas. Guthrie and Shepherd walked on through the room and stood at a door a short distance from the counter. While there they saw White getting some money from Omohundro and then Nicholas walked down to the end of the counter that goes across the store, picked up a newspaper, walked around to near the end of the other counter and appeared to be wrapping up something under the counter. He walked back with the package in his hand and placed it on the counter in front of White, who thereupon gave Nicholas some bills. White then picked up the package and walked out of the door. Guthrie and Shepherd followed, and at the bottom of the steps Guthrie stopped White and asked to see the package. White handed it to him and on unwrapping it, it proved to be a fifth of A.B.C. Board whiskey. The paper in which it was wrapped was a newspaper for negroes. When the white men entered the place, no package was observed in their hands or under their arms. Before the white men arrived, only negroes were around and in the store. The defendant said there were 40 or 50 people in there dancing at the time. Immediately after White sur-

rendered the bottle of whiskey, he said he had bought it from Nicholas for $10 and asked Guthrie to get his money back for him.

The defendant denied making the sale and claimed that he had sold to White only two packs of cigarettes and to Omohundro two bottles of coca-cola. He was supported in his version of the matter by White and Omohundro, and also by a Miss Payne. These three claimed that they had been at a dance at Trice's Lake, a few miles away; that White had ridden back in the car with Miss Payne, who lived at Scottsville, in Buckingham county, and they stopped at Nicholas' place, where White intended to transfer to another car to go to Fork Union. Miss Payne testified that White had the fifth of whiskey in her car and when he got out she wrapped it up in a newspaper and gave it to him, and he put it under his coat or into his pocket before going into Nicholas' place. She undertook to account for its being wrapped in a negro newspaper by saying she had a whole lot of newspapers in her automobile; that colored people helped her at the cannery and lots of times they wrapped up her cans in their newspapers. Guthrie testified she had told him she was a subscriber to that paper.

Guthrie was in uniform when he was in the store. Nicholas testified he knew him and saw him in the store, and certainly he would not have been so foolish as to sell liquor with a State trooper looking right at him. Guthrie said that at the trial justice's hearing Nicholas had testified that Guthrie was not in the store at the time.

■ It is quite clear that there is no merit in the defendant's claim that the verdict of the jury was contrary to the evidence. In oral argument his counsel admitted the evidence was sufficient if it was worthy of belief. That was for the jury to decide. There was nothing inherently incredible about it. The State trooper and his companion either saw what they said they saw, or they did not. The

jury believed they did, and that settles the question. The jury returned this verdict:

"We, the jury, find the accused guilty and fix his punishment at one hundred dollars and thirty days in jail with a suspended sentence."

Thereupon the court, speaking apparently to the clerk, said: "Rewrite the verdict. Just say, 'We, the jury find the defendant guilty as charged in the warrant and fix his punishment by a fine of one hundred dollars and thirty days in jail.' Gentlemen of the jury, you have nothing to do with suspending the sentence."

Defendant's counsel then said: "It might not be the jury's verdict if it is not suspended."

Then the court, after reading the verdict as so rewritten, said: "Gentlemen, is that your verdict? Would your verdict have been the same if you had known I was not going to suspend the sentence, because I am not going to suspend it?"

The court then pointed his finger at one juror who said: "All right with me;" and then the court pointed his finger at each of the other jurors individually and each in turn nodded his head.

Defendant's counsel objected to this procedure and moved to set aside the verdict on that ground, but the court overruled the motion. We think this was error.

The verdict originally returned by the jury, suspending the sentence, was, of course, an improper verdict. The jury had no power to suspend the sentence. Upon their undertaking to do so, the proper procedure would have been for the court to explain that fact to them and send them back to their room to write a legal verdict. It was clear from the verdict, as originally written, that the jury did not think the defendant should pay the fine assessed and also serve the jail sentence. If they had had an opportunity to confer about it after being told their original verdict could not be received, they might have fixed a different punishment, which the law permitted, or found a different verdict.

The defendant had a right to have the jury make up their own minds and reach their own conclusion about that, without aid or suggestion from the court. From being told by the court that he would not suspend the sentence, they would natuarally conclude that the court thought the defendant did not deserve the clemency they had sought to extend, and so might have been influenced to agree to the change. In the face of the announcement by the court, and the inference possible to be drawn from it, it would require more than average firmness and spirit for a juror to disagree under such circumstances. It was the province of the jury to say what the punishment should be, and it was important that they should decide about that in the seclusion of their own room, with each one free to express and to support with argument his views, uninfluenced and undeterred by any expression or opinion save their own.

In *Thompson* v. *Lynchburg*, 155 Va. 1122, 156 S. E. 392, the jury likewise returned a verdict undertaking to suspend the jail sentence. Counsel for the accused asked the court to send the jury back to their room to bring in a proper verdict. The court refused and entered judgment on the verdict, disregarding the attempted suspension. We held that to be error, and pointed out that the province of the jury ceases with the ascertainment of the punishment. It is then the duty of the court to put the verdict in proper form to state clearly the intention of the jury. If there is an ambiguity apparent on the face of the verdict, a poll of the jury may be taken to clarify it; but if it is matter that cannot be corrected, then the proper practice is to send the jury back to their room "where they can, untrammelled by any outside influence, arrive at a proper verdict." In the opinion in that case, written by former Chief Justice Campbell, this was said:

"In the case at bar we are dealing not with a reformed or amended verdict but with a verdict which shows upon its face the clear intention of the jury to impose upon the defendant only a pecuniary punishment. This, of course,

under the statute adverted to, they could not do. In this situation it was the duty of the trial court to instruct the jury as to the measure of punishment and to further instruct the jury that they were without power to suspend the jail sentence. Thus instructed, the jury should have been sent back to their room to further consider their verdict. * * * *." (155 Va. 1126).

In *Williams* v. *Commonwealth*, 153 Va. 987, 151 S. E. 151, we said that this court would go far in sustaining the trial courts when they undertake to reform defective verdicts in the presence of the jury and before they are discharged, and would also go far in disregarding defects in verdicts which have been accepted by the trial courts where the real finding of the jury may be determined, even though not accurately couched in the technical language of the law; but, what is equally important, we also said that "it is always necessary, however, before a judgment can be entered upon a verdict, that it appear just what the jury found or intended to find." (153 Va. 994).

The judgment complained of is reversed and the case is remanded for a new trial.

*Reversed and remanded.*