PUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:  Judges AtLee, Friedman and Raphael
Argued at Lexington, Virginia


EVA CAROL BELCHER

v.      Record No. 0945-21-3

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE FRANK K. FRIEDMAN
SEPTEMBER 27, 2022


FROM THE CIRCUIT COURT OF HENRY COUNTY
David V. Williams, Judge

Joseph A. Sanzone (Sanzone & Baker, L.L.P., on brief), for appellant.

Justin B. Hill, Assistant Attorney General (Jason S. Miyares, Attorney General, on brief), for appellee.


These events arise from allegations that Eva Carol Belcher ("appellant") misused her position of trust as a home healthcare provider to obtain goods via identity fraud. Appellant provided care to Charlotte McClain, whose son, James McClain, gave appellant access to his mother's credit card to purchase groceries and anything else Ms. McClain needed. The son later grew suspicious of the purchases that were being made—in addition to groceries, the credit card was used to purchase Kroger and Food Lion gift cards, as well as gift cards to Belk and fast-food restaurants. James McClain eventually contacted the police, fired appellant and other co-workers, and hired a new healthcare team. These charges followed, and a Henry County jury convicted appellant of seven misdemeanor counts and one felony count of identity fraud to obtain money, goods, or services, all in violation of Code § 18.2-186.3. The same jury also acquitted appellant of more than thirty similar charges.

Appellant challenges the sufficiency of the evidence to support her convictions, an evidentiary ruling, and irregularities in the sentencing process.

## I. Background[1]

James McClain hired appellant in September 2016 to provide care for his mother, Charlotte McClain. James became Ms. McClain's power of attorney in December 2016 and assumed control over her finances. He gave appellant a credit card ("the credit card") and instructed her to use it to buy anything his mother needed. He did not require appellant to show him receipts for these purchases.

James became suspicious over a year later, in February 2018, after discovering a receipt indicating that the credit card had been used to purchase inexpensive jewelry. After discovering additional suspicious purchases, he fired appellant and the other workers. A grand jury subsequently indicted appellant for identity fraud. The purchases that led to appellant's convictions are as follows:

### Indictment CR18-5467 (Misdemeanor)

Appellant worked from 7:00 a.m. until 3:00 p.m. on July 3, 2017. At 4:22 p.m. she used the credit card to purchase a $150 Kroger gift card. At 4:26 p.m., she used that gift card to purchase $69.01 worth of groceries indicative of a July 4th celebration, including Wild Cherry Pepsi, two family-size bags of potato chips, three containers of baked beans, four packages of hot dog buns, two packages of hot dogs, several containers of chili, and potato salad. Ms. McClain testified that she had never had a July 4th cookout, and James was not aware of any such cookout.

---

[1] Under well-settled principles, we state the facts in the light most favorable to the Commonwealth, the prevailing party below. *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018).

<u>Indictment CR18-5483 (Misdemeanor)</u>

On October 4, 2017, appellant worked from 8:00 a.m. until 2:30 p.m. At 6:42 a.m., she used the credit card to purchase a $50 Belk gift card. James and Ms. McClain each testified that they did not authorize appellant to purchase Belk gift cards and had never seen any Belk gift cards.

<u>Indictment CR18-5484 (Misdemeanor)</u>

Appellant did not work on October 28, 2017. At 8:29 p.m. that day, she used the credit card to purchase a $200 Kroger gift card, a $25 Applebee's gift card, and a $15 McDonald's gift card. At 8:57 p.m., she used the newly purchased Kroger gift card to purchase $151.18 worth of groceries. Ms. McClain testified that she did not authorize appellant to purchase Applebee's or McDonald's gift cards and had not seen any.

<u>Indictment CR18-5487 (Misdemeanor)</u>

On November 22, 2017, appellant worked from 7:00 a.m. until 4:00 p.m. At 3:38 p.m. that day, she used the credit card to purchase a $50 Belk gift card and a $200 Kroger gift card. Three minutes later, she purchased $170.57 worth of groceries with the newly purchased Kroger gift card.

<u>Indictment CR18-5488 (Felony)</u>

Appellant did not work on December 2, 2017. However, she made five separate transactions that day. At 8:14 a.m., she used the credit card to purchase a $200 Kroger gift card. One minute later, she purchased four Belk gift cards totaling $150. About an hour and a half later, she purchased three more Belk gift cards totaling $75. She also used Kroger gift cards to make two separate grocery purchases, one for $35.83 and another for $89.17 in groceries.[2]

---

[2] The $89.17 purchase was a split payment on a total purchase of $157.61. Appellant paid $89.17 with a gift card and the remainder in cash.

#### Indictment CR18-5491 (Misdemeanor)

Appellant did not work on December 9, 2017. At 11:02 a.m. that day, she purchased $62.32 worth of groceries; she paid using a gift card that had been purchased with the credit card. Among the items purchased was a twenty-four pack of Natural Light beer. Ms. McClain testified that she does not drink beer and did not ask appellant to purchase any. Appellant's husband testified that he drinks Natural Light beer and that appellant would buy it for him in packs of twenty-four. He also testified that he attended a Christmas party at Ms. McClain's house and that she served Natural Light beer.

#### Indictment CR18-5493 (Misdemeanor)

On December 20, 2017, appellant worked from 7:00 a.m. until 3:00 p.m. At 4:11 p.m., she used the credit card to purchase a $25 Belk gift card.

#### Indictment CR18-5504 (Misdemeanor)

Finally, appellant did not work on February 11, 2018. In fact, she did not work any day that week (February 11 through 17, 2018). She used the credit card to purchase a $200 Kroger gift card, which she then used to buy $173.18 worth of groceries. James testified that he did not know of any reason appellant would purchase groceries for his mother when she was not working that week.

### Appellant Denies Wrongdoing and Offers Explanations for the Disputed Purchases—But Some of the Explanations Prove to be Unpersuasive

Appellant testified that she often shopped for groceries when she was not working because Ms. McClain did not like to shop. She called a defense witness, Sandra Smith, who testified that "a lot of times" appellant would come to Ms. McClain's house on her days off to bring groceries or other food for Ms. McClain. Another defense witness who worked for Ms. McClain testified that she twice saw appellant come to the house outside of her work hours to bring groceries.

Appellant suggested that James wanted her to purchase gift cards from grocery stores "for the church." She also testified that she would purchase Kroger and Food Lion gift cards at Ms. McClain's direction. Sue Rosser, a friend of Ms. McClain, testified regarding the grocery gift cards. She stated that Ms. McClain's church had previously purchased Kroger gift cards at a discount and sold them to parishioners as a fundraiser. That program, however, had ended and purchasing gift cards directly from a store did not result in the church receiving any funds.[3]

Appellant further testified that Ms. McClain instructed her to purchase gift cards to Belk, McDonald's, and Applebee's to be used as gifts by Ms. McClain. Sandra Smith testified that Ms. McClain provided the workers with "[g]ift [c]ards and different stuff," including a Belk gift card, as game prizes around Christmas.

Appellant denied buying groceries for her own use, and evidence was presented that food and drinks were provided for the workers at Ms. McClain's house and that some of the groceries purchased by appellant were used for luncheons hosted by Ms. McClain. Appellant also testified that all of her "personal transactions" were paid for either with cash or her debit card. However, Special Agent Armstrong with the Virginia State Police testified that appellant was not indicted for "any cash purchases," "any credit card purchases, that did not include [g]ift [c]ards that were during [appellant's] work hours," or any "charges that . . . correspond[ed] specifically to any luncheons."

Appellant acknowledged having nine prior "bad check" convictions.

---

[3] Rosser testified that she explained to appellant that buying gift cards directly from the store would not benefit the church; however, this conversation took place after the criminal charges had already been placed against appellant.

<u>Admission of Testimony from James that Grocery Bills were Lower after Appellant was Fired</u>

At trial, much of the testimony focused on the amounts appellant spent on groceries that she claimed were solely for Ms. McClain's household.  The Commonwealth established that James tracked appellant's grocery expenditures.  The Commonwealth questioned James extensively on the items appellant purchased without any authorization.  The Commonwealth asked James if he continued to track grocery expenditures after appellant was fired and the new team of home caregivers took over.  After he replied that he did, the Commonwealth asked, "[h]ow did the spending compare after [appellant] was gone?"  At this point, appellant objected, arguing that the answer would be "conclusory" and would confuse the jury.  The trial court overruled appellant's objection, and James testified that the grocery expenditures by the new home caregivers "were less."

Sentencing Issues

The jury found appellant guilty of seven misdemeanors and one felony under Code § 18.2-186.3, while acquitting her of over thirty other charges.  After the guilt phase of the trial, the trial court issued the following jury instructions for each misdemeanor conviction:

> THE COURT INSTRUCTS THE JURY that, having found the defendant guilty of the crime of identity fraud to obtain money, goods, or services < $200 . . . and upon consideration of all the evidence you have heard, you shall fix the defendant's punishment at:
>
> 1.  Confinement in jail for a specific time, but not more than twelve (12) months; or
>
> 3.  [sic] A fine of a specific amount, but not more than $2,500; or
>
> 4.  Confinement in jail for a specific time, but not more than twelve (12) months, and a fine of a specific amount, but not more than $2,500.

The trial court issued the following instructions for the felony conviction:

> THE COURT INSTRUCTS THE JURY that, having found the defendant guilty of the crime of identity fraud to obtain money, goods, or services - $200 or more . . . and upon consideration of all the evidence you have heard, you shall fix the defendant's punishment at:
>
> 1. A specific term of imprisonment, but not less than one (1) year nor more than twenty (20) years; or
>
> 2. Confinement in jail for a specific time, but not more than twelve (12) months; or
>
> 3. A fine of a specific amount, but not more than $2,500; or
>
> 4. Confinement in jail for a specific time, but not more than twelve (12) months, and a fine of a specific amount, but not more than $2,500.

Code § 18.2-186.3 punishes identity fraud as a Class 1 misdemeanor or Class 6 felony.[4] Under Code § 18.2-11, a Class 1 misdemeanor is punishable by "confinement in jail for not more than twelve months and a fine of not more than $2,500, either or both." Under Code § 18.2-10(f), a Class 6 felony is punishable by "a term of imprisonment of not less than one year nor more than five years, or in the discretion of the jury or the court trying the case without a jury, confinement in jail for not more than 12 months and a fine of not more than $2,500, either or both." Here, the jury was improperly told it could sentence appellant to twenty years on the felony conviction when the maximum sentence permissible was five years. Code §§ 18.2-186.3, 18.2-10(f).

The jury's announced felony sentence of seven-and-a-half years in prison plus a fine exceeded the statutory maximum on two levels. First, it imposed a sentence in excess of the statutory maximum of five years; second, it awarded a fine in combination with a

---

[4] At the time these charges originated, Code § 18.2-186.3 treated a violation causing "financial loss" of greater than $200 as a felony. 2013 Va. Acts ch. 466. The amount of financial loss required for felony charges is now $1,000. 2020 Va. Acts ch. 401.

seven-and-a-half year sentence, which was also impermissible. Appellant did not object to the jury instructions, nor to the felony sentence exceeding the statutory maximum of five years.

The jury also sentenced appellant to "1 year" on each of the misdemeanor offenses. After the jury was released, the trial judge stated that, in regard to the misdemeanor sentences, "obviously, when they say one year; that can only be twelve months." Appellant's counsel then replied, "Well, [J]udge, I think there is some law on it. I think it's a problem; that creates a problem. We can take that up when we get back [after receiving a pre-sentence report]." Later, appellant's attorney filed a memorandum seeking to overturn the verdict, arguing that each sentence imposed by the jury "exceeds and otherwise varies from the permitted" sentencing range.[5]

The trial court ultimately amended each of the announced sentences. These revisions occurred well after the jury was discharged. As to the felony sentence, the trial court struck the fine and left the seven-and-a-half-year sentence in place. As to the misdemeanor sentences, explaining that the jury likely did not understand the difference between twelve months and one year, the trial court interpreted each one-year sentence as a twelve-month sentence. This appeal followed.

---

[5] At the subsequent hearing regarding the sentences, appellant's attorney noted that the trial court had overruled his motion and "now, we are in a situation where you apparently are going to sentence on the case yourself." Appellant's attorney argued that "there's a substantial difference between one year and twelve months" and that a one-year sentence is "a felony sentence" while a twelve-month sentence is "a misdemeanor sentence." He noted that the jury's misdemeanor sentences were not "allowed by the instructions" and therefore "cannot be accepted."

## II. Analysis

### A. The Evidence was Sufficient to Show that Appellant Used Ms. McClain's Identifying Information to Obtain Money or Goods Without Authorization and with Intent to Defraud

Appellant asserts that the evidence was insufficient to support her convictions. When reviewing the sufficiency of the evidence, "the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it." *Smith v. Commonwealth*, 296 Va. 450, 460 (2018) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018)). "The question on appeal, is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Yoder v. Commonwealth*, 298 Va. 180, 182 (2019)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

### 1. The Elements of a Violation of Code § 18.2-186.3

Appellant was convicted of both misdemeanor and felony violations of Code § 18.2-186.3. That statute provides in pertinent part:

> A. It shall be unlawful for any person, without the authorization or permission of the person or persons who are the subjects of the identifying information, with the intent to defraud, for his own use or the use of a third person, to:
>
> . . . .
>
> 2. Obtain money, credit, loans, goods, or services through the use of identifying information of such other person;
>
> . . . .
>
> C. As used in this section, "identifying information" shall include but not be limited to: (i) name; (ii) date of birth; (iii) social

- 9 -

security number; (iv) driver's license number; (v) bank account numbers; (vi) credit or debit card numbers; (vii) personal identification numbers (PIN); (viii) electronic identification codes; (ix) automated or electronic signatures; (x) biometric data; (xi) fingerprints; (xii) passwords; or (xiii) any other numbers or information that can be used to access a person's financial resources, obtain identification, act as identification, or obtain money, credit, loans, goods, or services.

Code § 18.2-186.3.

Appellant argues that because she did not make false statements, wrongfully possess Ms. McClain's credit card, or misrepresent her identity or authority to use the card, she should not have been convicted. She essentially challenges her convictions by seeking to import elements from related fraud statutes (which she is not charged with violating) into Code § 18.2-186.3 and then suggesting that she did not commit any of these improper acts. Her arguments, however, are inconsistent with the language of Code § 18.2-186.3 and ignore the elements stated in the statute.

Appellant contends that because she had authorization to use Ms. McClain's credit card, she did not misrepresent her identity and, therefore, could not be guilty of identity fraud. In *Taylor v. Commonwealth*, 298 Va. 336, 339 (2020), the Supreme Court rejected a similar argument. In *Taylor*, the defendant tried to cash a stolen check that was made payable to her. When she attempted to cash the check at a bank, she presented her own driver's license and did not misrepresent herself as the victim whose checks were stolen. *Id.* On appeal, Taylor argued that the evidence was insufficient to convict her because "she used only her name when attempting to cash the stolen check," which, Taylor contended, "did not constitute use of another's identifying information." *Id.* at 340. The Supreme Court rebuffed Taylor's arguments, holding that Code § 18.2-186.3 has no requirement that a defendant misrepresent her identity or authority to possess the identifying information. *Id.* at 343. The crime involves defrauding the victim through use of the victim's identifying information, which in *Taylor* involved the victim's

- 10 -

bank account numbers and here involves the use of Ms. McClain's credit card numbers. *See* Code § 18.2-186.3(C)(v), (vi). *Taylor* flatly rejects appellant's logic where appellant had permission to use the credit card for Ms. McClain's benefit but instead used it to make unauthorized purchases for herself.

Appellant next argues that the trial court erred in convicting her when "her actions failed to include false statements" as required under Code § 18.2-186. Appellant, however, was not charged under Code § 18.2-186—and her conviction under Code § 18.2-186.3 simply does not require a showing of false statements. Appellant also analyzes her convictions using elements from Code §§ 18.2-195 and 18.2-192, which define, respectively, credit card fraud and credit card theft. She asserts that to violate these provisions she must misappropriate or wrongfully possess a credit card. Again, her analysis raises "strawman" elements from statutes that she simply is not charged with violating.

Appellant was convicted of multiple violations of Code § 18.2-186.3, which requires a showing that appellant used Ms. McClain's identifying information to obtain money or goods for appellant's or a third party's benefit, without Ms. McClain's authorization and with an intent to defraud. Appellant was authorized to use Ms. McClain's card, but she was not authorized to make purchases for her own benefit. It is her improper use of Ms. McClain's credit card numbers to obtain money and goods for herself or others, with the intent to defraud Ms. McClain, that is expressly prohibited under Code § 18.2-186.3.

## 2. The Record Supports the Jury's Guilty Verdicts

There was ample evidentiary support for each of appellant's convictions under Code § 18.2-186.3. While appellant offered alternate explanations for the challenged purchases, the fact-finder was not required to accept her testimony. "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude

that the accused is lying to conceal [her] guilt." *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998).

As to CR18-5504, appellant purchased a $200 Kroger gift card and then used that gift card to buy groceries. She did not work for Ms. McClain any day the week these purchases were made, and James testified that he did not know of any reason appellant would purchase groceries for his mother when she was not working that week. As to CR18-5467, appellant purchased groceries that appeared to be for a July 4th celebration; however, Ms. McClain testified that she did not have a July 4th cookout, and James was not aware of any such cookout. As to CR18-5483, CR18-5487, CR18-5488, and CR18-5493, appellant purchased ten separate Belk gift cards; James and his mother testified that they did not authorize appellant to purchase Belk gift cards and had never seen or received any Belk gift cards. As to CR18-5484, appellant purchased, among other things, a $25 Applebee's gift card and a $15 McDonald's gift card; Ms. McClain testified that she did not authorize appellant to purchase Applebee's or McDonald's gift cards and had not seen any such cards. Finally, as to CR18-5491, appellant purchased a twenty-four pack of Natural Light beer; Ms. McClain testified that she does not drink beer and did not ask appellant to purchase any, and appellant's husband testified that he drinks Natural Light beer and that appellant buys it for him in twenty-four packs.

We note that the jury acquitted appellant of over thirty charges. The seven misdemeanors and one felony for which the jurors convicted appellant are supported by the record. The judgment of the trial court in upholding those convictions was not plainly wrong or without evidence to support it. *Ingram*, 74 Va. App. at 76.

### B. Admissibility of Testimony Regarding Later Grocery Expenses

Appellant alleges that:

> [t]he [t]rial [c]ourt erred by allowing the son and power of attorney for the cardholder to offer speculative, conclusory, and hearsay

> evidence that the caregivers who were employed after the [a]ppellant left the McClain's employ spent less money on groceries per month, implying that items were missing when all witnesses testified that they could not identify even one purchased item that the complaining witness did not receive or consume.

"It is well-settled that '[d]ecisions regarding the admissibility of evidence "lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion."'" *Nottingham v. Commonwealth*, 73 Va. App. 221, 231 (2021) (quoting *Blankenship v. Commonwealth*, 69 Va. App. 692, 697 (2019)). "A court has abused its discretion if its decision was affected by an error of law or was one with which no reasonable jurist could agree." *Tomlin v. Commonwealth*, 74 Va. App. 392, 409 (2022).

At the time that James testified regarding whether the amount of money spent on groceries increased or decreased after appellant was fired, the record was replete with evidence regarding grocery bills. The record further established that James kept track of his mother's household's grocery bills and credit card statements. Similarly, he was questioned extensively on which purchases were authorized and which were not. All of this testimony was admitted without objection.

Appellant did object, however, when the Commonwealth sought to elicit testimony from James that the cost of groceries went down after appellant was relieved of her duties. Appellant now asserts that this testimony was inadmissible hearsay, conclusory, and speculative.

### 1. No Hearsay Objection was Lodged Below and that Claim is Waived

Appellant did not make an objection based on hearsay below; instead, she objected to James making "conclusory statements about other people and their actions." Therefore, appellant has waived her argument that James' testimony was hearsay.[6] *See* Rule 5A:18 ("No

---

[6] "Hearsay is 'an out of court statement offered to prove the truth of the matter asserted.'" *Bynum v. Commonwealth*, 57 Va. App. 487, 491 (2011) (quoting *Lawrence v. Commonwealth*, 279 Va. 490, 497 (2010)); Va. R. Evid. 2:801(c).

- 13 -

ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to . . . attain the ends of justice."); *see also Mollenhauer v. Commonwealth*, 73 Va. App. 318, 329-30 (2021) ("[T]he *precise* nature of the objection must be clear because '[m]aking one specific argument on an issue does not preserve a separate legal point on the same issue for [appellate] review.'" (second and third alterations in original) (quoting *Johnson v. Commonwealth*, 58 Va. App. 625, 637 (2011))).

2. It was Not an Abuse of Discretion for the Trial Court to Admit the Disputed Testimony

Appellant did preserve her objection on the basis that the disputed testimony was conclusory and speculative; however, we find that these attacks on the evidence are unfounded. "Conclusory" is defined as "[e]xpressing a factual inference without stating the underlying facts on which the inference is based." *Conclusory*, *Black's Law Dictionary* (11th ed. 2019); *see also Martin v. Lahti*, 295 Va. 77, 87 (2018) (absent any foundational basis, evidence of what daughter thought mother would do in certain circumstances was properly excluded).

Appellant argues that James' testimony was inadmissible because it was "nothing more than a narration by him of matters he claims were related to him by another" and "based upon his second ha[n]d knowledge of the efforts of the new nurses in the home." This description of the testimony as unconfirmed guesswork is inaccurate. Here, James testified that he knew the amount of grocery spending decreased after appellant was fired because he had reviewed the credit card statements and grocery bills. Before appellant was fired, James reviewed the credit card statements and made efforts to get detailed information on the purchases that had been made. He continued to track the grocery expenses by reviewing the credit card statements and grocery expenditures after appellant was fired and he brought on new help. His testimony regarding the decreased spending on groceries after appellant's firing was based on his

- 14 -

knowledge of these records.[7]  This was not "speculation" or evidence lacking any factual basis. *See Bussey v. E.S.C. Rests., Inc.*, 270 Va. 531, 538 (2005) (finding testimony regarding connection between meal and subsequent illness was not speculative).  Whether grocery expenditures went up or down was a fact within James' personal knowledge.[8]

Appellant also argues that James' testimony that the grocery expenses went down after her departure was "speculative" because there was no evidence of the food reserves already in the house, Ms. McClain's needs during those months, or the quality of goods purchased.  At most, these ancillary issues go only to the weight that should be afforded to the fact that the amount spent on groceries decreased.  *Church v. Commonwealth*, 71 Va. App. 107, 122-23 (2019) (once the "threshold for proving admissibility has been met, any gaps in the evidence are relevant to the trier of fact's assessment of its weight rather than its admissibility" (citing *Kettler & Scott, Inc. v. Earth Tech. Cos.*, 248 Va. 450, 459 (1994))).  It is well-established that "[t]he weight which should be given to evidence" is a question "which the fact finder must decide." *Bridgeman v. Commonwealth*, 3 Va. App. 523, 528 (1986).

The record shows that the decrease in grocery expenses after appellant's departure was a matter with which James was well-acquainted, and it was not an abuse of discretion for the trial

---

[7] Appellant did not object to James' testimony regarding the credit card statements nor assert that the credit card statements themselves were hearsay.  Therefore, to the extent appellant's argument on brief attempts to raise that issue, it is waived pursuant to the contemporaneous objection rule.  Rule 5A:18 ("No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to . . . attain the ends of justice.").

[8] Even if the challenged evidence is viewed as lay opinion evidence under Virginia Rule of Evidence 2:701, it is still admissible on this record.  "Opinion testimony by a lay witness is admissible if it is reasonably based upon the personal experience or observations of the witness and will aid the trier of fact in understanding the witness' perceptions."  Va. R. Evid. 2:701.  The question of whether grocery bills decreased after appellant was fired was plainly based on James' personal observations and perceptions.

- 15 -

court to admit this testimony. *Nottingham*, 73 Va. App. at 231 (applying abuse of discretion standard).

## C. Sentencing Issues

Appellant alleges that the "[t]rial [c]ourt erred by not resentencing or setting the verdict aside as contrary to the law and evidence when each jury verdict was outside the sentence allowed by law and contained in the jury instructions in the case." Appellant argues that the trial court should have ordered a new sentencing on all charges. The Commonwealth agrees that a resentencing is warranted with respect to the felony conviction, but argues that the misdemeanor sentences should stand on appeal.

"A trial court's assessment of punishment is reviewed under an abuse of discretion standard." *Commonwealth v. Greer*, 63 Va. App. 561, 567 (2014). "A trial court 'by definition abuses its discretion when it makes an error of law. . . . The abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions.'" *Id.* at 568 (quoting *Porter v. Commonwealth*, 276 Va. 203, 260 (2008)). Finally, "[t]o the extent that determinations regarding sentencing involve the interpretation of a statute or the common law, such an interpretation is a question of law reviewed *de novo* on appeal." *Id.*

### 1. The Felony Sentence is Invalid and Necessitates a Resentencing

As a preliminary matter, appellant did not argue in the trial court or on appeal that the length of her sentence on the felony conviction exceeded the statutory maximum of five years. However, "a sentence imposed in violation of a prescribed statutory range of punishment is void *ab initio*." *Rawls v. Commonwealth*, 278 Va. 213, 221 (2009). Obviously, denying a defendant "his liberty on the basis of a void sentence would impose a grave injustice upon him." *Gordon v. Commonwealth*, 61 Va. App. 682, 685 (2013) (quoting *Charles v. Commonwealth*, 270 Va. 14,

20 (2005)). The proper procedure for correcting this sentencing error is to conduct a new sentencing hearing. *See Greer*, 63 Va. App. at 577; Code § 19.2-295.1.

In *Rawls*, a jury was told that it could sentence the defendant to forty years' imprisonment for second-degree murder when the statutory maximum was twenty years. 278 Va. at 215. The jury sentenced the defendant to twenty-five years—significantly less than the instruction allowed, but more than the statute permitted for the offense. *Id.* at 216. The circuit court subsequently reduced Rawls' sentence to twenty years, the statutory maximum. *Id.* at 217. The Supreme Court reversed, explaining that a criminal defendant who receives a sentence in excess of the maximum sentence permitted by statute

> is entitled to a new sentencing hearing. This common law rule of jurisprudence will eliminate the need for courts to resort to speculation when determining how a jury would have sentenced a criminal defendant had the jury been properly instructed or had the jury properly followed correct instructions. Applying this rule to Rawls, we hold that he is entitled to a new sentencing hearing on his second degree murder conviction . . . .

*Id.* at 221. The same is true here; the jury was erroneously instructed and, as a result, appellant received a sentence outside the statutorily-permitted range.

A sentence that falls outside the statutory range of punishment "is void *ab initio* because 'the character of the judgment was not such as the [C]ourt had the power to render.'" *Id.* (alteration in original) (quoting *Anthony v. Kasey*, 83 Va. 338, 340 (1887)); *see also Greer*, 63 Va. App. at 579 (jury sentence below statutory minimum was unlawful and the trial court's imposition of that sentence was void *ab initio*). Again, when this occurs, a criminal defendant is entitled to a new sentencing hearing. *Rawls*, 278 Va. at 221; *Greer*, 63 Va. App. at 579. Under Code § 19.2-295.1, if a sentence is later set aside or found to be invalid, "the court shall impanel a different jury to ascertain punishment, unless the defendant, the attorney for the

Commonwealth and the court agree, in the manner provided in [Code] § 19.2-257, that the court shall fix punishment."[9]

Here, the sentencing instructions and ultimate sentence relating to appellant's felony conviction were gravely flawed. The instructions permitted a sentence of twenty years, when the statutory maximum sentence for a Class 6 felony is five years. Code § 18.2-10(f). The resulting seven-and-a-half year sentence (even as amended to remove the accompanying fine) exceeded the statutory maximum term and cannot stand. Accordingly, appellant is entitled to a new sentencing hearing on her felony conviction under *Rawls* and Code § 19.2-295.1. The thornier question is how to resolve the seven related misdemeanor convictions.

2. The Misdemeanor Sentences are Improper and Require a Resentencing

The jury was instructed that it could sentence appellant to "not more than twelve (12) months" on each misdemeanor violation. However, it imposed a sentence of "1 year" on these convictions. The Commonwealth argues that the "twelve month" misdemeanor sentences—as ultimately revised by the trial court—should stand. The Commonwealth claims that no "colloquial difference" exists between one year and twelve months and that the jury was not instructed on the legal difference between these sentences. The Commonwealth concludes that the trial court did not err in interpreting the jury's sentence as twelve months rather than one year and that this alteration did not materially change the sentence.

---

[9] Despite appellant's lack of a formal objection to the failure to impanel a new jury for resentencing, the record does not show that she agreed to the trial court fixing her punishment. Code § 19.2-257 allows a court to "hear and determine" a case without a jury with the accused's "consent after being advised by counsel and the concurrence of the attorney for the Commonwealth and of the court entered of record." There is no evidence before us that appellant was advised by counsel and consented to the trial court's determination of an appropriate sentence. Absent such evidence, Code § 19.2-295.1 requires that a new jury be impaneled to fix a proper sentence.

a. <u>There is a Difference Between a Twelve-Month Sentence and a One-Year Sentence</u>

To be sure, in a layman's sense, there is very little distinction between a twelve-month sentence and a one-year incarceration. Under Virginia law, however, there are distinct differences in these terms that significantly affect the way such sentences are carried out. The legal difference between twelve months and one year has previously been noted by the Attorney General's office, albeit in a different context: "[A] sentence of one year is a sentence to the Department [of Corrections], while a sentence of twelve months is a jail sentence." 2009 Op. Va. Att'y Gen. 69, 70 n.7.

The trial court acknowledged the misdemeanor sentences were improper after the sentences were pronounced, stating, "when [the jury] say[s] one year; that can only be twelve months." Appellant's counsel did not acquiesce to any such alteration, noting that "I think it's a problem; that creates a problem." After the jury was dismissed and appellant's motion to overturn the convictions was denied, the trial court reduced the one-year sentences to twelve months.

The difference between "twelve months" and "one year" affects sentences in various ways. A misdemeanor sentence of twelve months or less is served in a local jail, while a sentence of one year or more is a sentence to the Department of Corrections and carries at least the possibility of a prison facility. 2009 Op. Va. Att'y Gen. at 70 n.7. See Code §§ 18.2-8, 18.2-15. A criminal defendant has a far more generous opportunity to earn credits allowing for early release on sentences of twelve months or less under Code § 53.1-116(A) than under Code

§ 53.1-202.3, which governs earned sentence credits for sentences of one year or more.[10]

Similarly, if a defendant receives a prison sentence, the trial court loses the ability to suspend or otherwise modify that sentence sixty days after the defendant has been taken into the custody of the Department of Corrections. Code § 19.2-303. However, if a defendant receives a jail sentence, the trial court retains the ability to suspend or modify that sentence until it has been completely served. *Id.* In short, when it comes to criminal sentencings in Virginia, twelve months is not simply another way of expressing one year, and the phrases do not mean the same thing. This is consistent with the rule of statutory construction that when the General Assembly "uses two different terms in the same act, those terms are presumed to mean two different things." *Shelor Motor Co., Inc. v. Miller*, 261 Va. 473, 480 (2001); *see* Code §§ 18.2-10, 18.2-11.

Notably, in *Rawls*, where the defendant's improper second-degree murder sentence was overturned, the Supreme Court refused to grant a new sentencing for related charges where those sentences were within the "statutorily prescribed ranges of punishment"—and no error was assigned in the trial court to those sentences. *Rawls*, 278 Va. at 221-22. Here, by contrast, appellant has preserved the misdemeanor sentencing errors on direct appeal and the one-year sentences are *not* within the statutorily prescribed range for the offenses.

---

[10] We are mindful that Code § 1-223 states that "'[m]onth' means a calendar month and 'year' means a calendar year." These definitions, however, do not reflect the different sentencing repercussions a felony sentence of one year or more can present vis-à-vis a misdemeanor sentence. For example, under Code § 53.1-116(A), an inmate serving a misdemeanor sentence earns one day of "good conduct credit" for each day that is served, assuming the inmate does not violate the jail's rules and regulations. Under Code § 53.1-202.3, an inmate serving a felony sentence may earn at most fifteen days for every thirty days that are served. For practical purposes, under this statutory framework, an inmate could serve a twelve-month misdemeanor sentence in six months, while a one-year sentence would take a minimum of approximately eight months to complete.

"Once a trial court enters a formal adjudication of guilt, it must impose the punishment prescribed by the legislature; it has no inherent authority to depart from that range of punishment." *Starrs v. Commonwealth*, 287 Va. 1, 12 (2014). In this case the jury gave appellant sentences that were not contemplated by the legislature. Furthermore, the *Rawls* holding was "purposefully broad" and intended to eliminate judicial recrafting of invalid jury sentences. *See Grafmuller v. Commonwealth*, 290 Va. 525, 530 (2015) (citing *Rawls*, 278 Va. at 221). When a sentence is outside the statutorily prescribed range of punishment, a defendant is entitled to a new sentencing hearing.

b. There are Procedures for Remedying Sentencing Errors, But They Were Not Employed Here

When a jury reaches a verdict that is not supported by the instructions or the law, it is appropriate for a judge to send the jury back to the jury room to render a proper verdict. For example, in *Thompson v. City of Lynchburg*, 155 Va. 1122 (1931), the Supreme Court observed that it is incumbent on the trial judge not to discharge the jury "upon the return of an illegal verdict." *Id.* at 1126. The Supreme Court stated that the trial court should have instructed the jury that its sentence was improper and sent them back to "further consider" their verdict. *Id.* Similarly, in *Gardner v. Commonwealth*, 3 Va. App. 418 (1986), this Court upheld a trial court's decision to reassemble the jury "moments after its discharge" to correct an error. *Id.* at 424. This Court held that because the jury never left the presence of the court, and the trial record showed that the jury remained in the actual and visible presence of the trial court and under its control, it was appropriate to let the original jury resolve the matter. *Id.* at 424-25.

In this case, however, the jury was discharged and released before the sentencing improprieties were examined and "fixed." In *LeMelle v. Commonwealth*, 225 Va. 322, 324 (1983), the Supreme Court ruled that "once a jury is discharged and leaves the presence of the

court, it cannot be reassembled to correct a substantive defect in its verdict." The Supreme Court reiterated this rule in *Quesinberry v. Commonwealth*, 241 Va. 364, 377 (1991).

Here, the trial court revised the improper verdicts itself after the jury was released. This was impermissible. *See, e.g.*, *Weeks v. Commonwealth*, 55 Va. App. 157, 163 n.3 (2009) ("After the verdict has been received and the jury discharged . . . the control of the jury, and of the court over such verdict, is at an end. The court cannot alter it, nor can the jury be recalled to alter or amend it." (quoting *Atkinson v. Neblett*, 144 Va. 220, 237 (1926))).

### c. The Appropriate Remedy in this Case is a Resentencing on All Convictions Pursuant to Code § 19.2-295.1

The one-year sentences assessed by the jury for the misdemeanors committed here are beyond the permissible sentencing limit of twelve months set by Code § 18.2-11 (allowing "confinement in jail for not more than twelve months . . ."). The trial court's re-casting of these sentences after dismissing the jury is inconsistent with Code § 19.2-295.1. Because the jury's sentences on each of appellant's eight convictions were outside the range of punishment prescribed by the legislature, and because appellant did not specifically consent to the trial court imposing new sentences on her convictions, we must remand each conviction for resentencing under *Rawls* and Code § 19.2-295.1.[11]

---

[11] The jury's sentences on the seven misdemeanors were outside the statutorily permissible range for the offense, albeit narrowly. This determination entitles appellant to a resentencing on these charges. We note, given the unusual circumstances surrounding these sentences, that the fact that the jury was incorrectly instructed that an identity fraud crime involving $200 or more could result in a twenty-year imprisonment (four times what the statute properly allows) could very well have influenced the jury's sentencing on the misdemeanor offenses. If a jury is improperly told that identity theft of $200 can be punishable by up to twenty years in prison, this easily could upwardly skew the jury's views of a proper sentence for identity theft of under $200. In light of *Rawls*, we need not speculate as to whether, or how, the flawed instruction may have influenced the jury's deliberations. To the extent the twelve-month/one-year distinction may strike some as hair-splitting, the likelihood that the flawed instruction affected the entire sentencing process provides further support for requiring a resentencing on all convictions.

III.  Conclusion

Appellant's convictions were supported by ample evidence.  While appellant offered explanations for her purchases, the fact-finder was not required to accept her testimony.  The trial court's determination that the evidence was sufficient to support the jury's verdict was not plainly wrong or without evidence to support it.  Thus, appellant's convictions are affirmed.

The trial court did not err in admitting James' testimony regarding the decrease in grocery bills following appellant's departure.  James explained that his testimony was based upon his review of the credit card statements and his own monitoring of the grocery expenses.  The trial court did not abuse its discretion in concluding that the testimony was neither conclusory nor speculative.

Finally, we vacate appellant's sentences and remand each of appellant's convictions for resentencing.  The seven-and-a-half-year felony sentence clearly exceeds the five-year statutory maximum penalty for a violation of Code § 18.2-186.3.  Furthermore, the one-year sentences on each misdemeanor conviction were similarly outside the range of punishment allowed by the legislature.  Under Code § 19.2-295.1, appellant is entitled to a new sentencing hearing on each of her convictions.  We remand for further proceedings consistent with this opinion.

*Affirmed in part, vacated in part and remanded.*